## GULF SMOKELESS COAL CO. et al. v. SUTTON, STEELE & STEELE et al.

Circuit Court of Appeals, Fourth Circuit.
October 15, 1929.

No. 2825.

Donald M. Carter, of Chicago, Ill., and Russell S. Ritz, of Bluefield, W. Va. (Francis W. Parker, Jr., and Norman S. Parker, both of Chicago, Ill., on the brief), for appellants.

A. S. Pattison, of Washington, D. C., D. J. F. Strother, of Welch, W. Va., A. S. Pattison & Son, of Washington, D. C. (Strother, Sale, Curd & Tucker, of Welch, W. Va., and W. H. Pattison, of Washington, D. C., on the brief), for appellees.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. This is an appeal in an infringement suit instituted by Sutton, Steele & Steele, the owners of patents 1,073,644 and 1,315,881, covering separating tables and processes of separation, and the American Coal Cleaning Company, licensee under the patents, against the Gulf Smokeless Coal Company. During the hearing of the case, an order was entered making Roberts & Schaefer Company, an Illinois corporation, a party defendant, on the ground that it had manufactured and installed the separating tables and process of separation in use by the coal company and had entered into a contract with that company to defend any suits for infringement which might be instituted on account thereof. The court below held the patents valid and infringed. It granted an injunction against Roberts & Schaefer Company, as well as the coal company, forbidding further infringement, and referred the case to a master for an accounting against both defendants. Three questions are presented by the appeal: (1) Whether the patents sued on are valid; (2) if so, whether the coal company has been guilty of infringement; and (3) whether the court acquired jurisdiction of the Roberts & Schaefer Company.

The patents in suit cover separating tables and processes for the separation of mixtures containing particles of different specific gravity, such as ores, minerals, coal, etc. The value of these tables and processes depends particularly upon their suitability for separating fine coal from slate; and it is for this purpose that they are used by the defendant coal company. The table covered by patent 1,073,644 may be described as a jig table with a pervious top, inclined in such way that one corner, being the one at which the mixture to be separated is fed upon it, is higher than the corresponding corner of the opposite side and lower than the corresponding corner of the opposite end. Narrow metal strips, called riffles, are attached to the top extending longitudinally; and beyond the end of these is a bar, called a banking bar, designed to retard the longitudinal movement of the particles of the mixture. The table is agitated longitudinally, and at the same time air is forced under pressure through the pervious top, with the result that the heavier particles of the mixture are propelled along the riffles, pile up against the banking bar, and guided by it pass off the table, whereas the lighter particles rise to the top and, under the influence of gravity, acquire a movement transverse the longitudinal movement and pass over the riffles and then off of the table at a different place from the heavier particles. The table of patent 1,315,881 differs from that of the other patent, in that it is provided with a

tailings riffle opposite the banking bar, which cuts off the lower corner of the table, and which is so low that the lighter particles flow over it just as they do over the other riffles, with the result that the lighter particles are more rapidly removed from the table and its capacity is increased. The following is a fair representation of the top of the table which is being constructed under the patents in suit:

EXHIBIT NO. 10.
PLAINTIFFS' MACHINE

BANKING BAR
LINES OF SLATS OBSTRUCTION
DIRECTION OF THRUST
TAILINGS RIFFLE

It is the process of separation covered by the patents in suit, however, and not the tables themselves, which is claimed by complainants to have been infringed. The principle of the separating table is old; but complainants have devised a new process, which, with the aid of certain changes in the old separating tables, covered by their patents, has revolutionized the process of dry separation. This process may be described briefly as operating the tables in such way as to form an obstruction of the heavier particles beyond the strata of the particles containing tailings, to cause the lighter particles to move transversely and in a direction opposite the propelling movement of the heavier particles and to flow over the tailings riffle and escape from the machine. Claim 7 of patent No. 1,-073,644 and claim 11 of No. 1,315,881 may be taken as typical of the process claims of the patents. They are as follows:

"7. The process of concentrating a mass of material, parts thereof having different characteristics, consisting in supporting the material upon a surface by a gaseous cushioning medium, gravitally feeding said material in one path, imparting a propelling movement in a direction across the movement of the material by gravity and forming an obstruction of said material across the line of travel of the propelling movement of said material until a substantially vertical stratum of concentrates is established beyond the strata of the material containing tailings."

"11. The process of concentrating a mass of material, parts thereof having different characteristics, consisting in gravitally feeding and supporting the material upon a transversely and longitudinally inclined pervious support to cause the material to move longitudinally thereon by gravity, supporting the material by a gaseous cushioning medium to permit stratification thereof, imparting to the heavier particles of said material by a series of impacts a positive movement by gravity, forming an obstruction of concentrates beyond the strata of material, containing tailings across the imparted movement of said material to exert a back pressure against the mass of material on said surface, and obstructing the movement of the concentrates in their movement exerted by back pressure for exerting and maintaining a constant pressure thereon, and subjecting the overlying stratum of lighter particles to the action of gravity to cause said particles to move transversely of said table in a direction opposite to the propelling movement of the heavier particles."

It is argued that there is nothing new in forming an obstruction of the heavier particles of the mixture; that this is in effect nothing more than slowing up the transverse movement, which could be caused by elevating the end of one of the old separating tables; and that, at all events, the process is not patentable, being but the function of the tables themselves. But we think that there can be no doubt that the process of the patents is new. While the slowing up of the transverse movement of the heavier particles on one of the old separating tables might have been accomplished by elevating the end of the table as contended by defendants, no one thought of doing this as a means of accelerating the process of separation. On the contrary, it is shown to have been achieved as the result of experiments conducted by complain-

ants. It has resulted in an increase of capacity until a table one-third the size of the old tables has a capacity nine times as great. It has revolutionized the process of dry separation and has made it available for the cleaning of fine coal, which is of great value to the coal mining industry. Knowledge after the event is always easy; but as said by Mr. Justice McKenna in the Grant Tire Case: "The law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the acceptance and utility of change as a further evidence, even as demonstration." Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 435, 31 S. Ct. 444, 447, 55 L. Ed. 527; U. S. Industrial Chemical Co. v. Theroz Co. (C. C. A. 4th) 25 F.(2d) 387; Frick Co. v. Lindsay (C. C. A. 4th) 27 F.(2d) 59.

The principles laid down in the case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 330, 67 L. Ed. 523, seem to us to be controlling here on the question of novelty. In that case the invention involved merely the elevation of the breast roll end of the paper making wire of a Fourdrinier paper making machine, with the result that the liquid stock discharged upon the machine acquired, through the force of gravity, an additional speed, enabling it to keep pace with the machine at the critical paper-forming point, and making possible a much speedier production of good paper than had been theretofore obtained from the use of the machine. The court sustained the patent and held that a previous slight elevation of the wire for another and distinct purpose did not constitute anticipation. It held, also, that a patent for a meritorious improvement on an old machine was entitled to a liberal construction, and, in disposing of the contention that what had been accomplished did not rise to the dignity of patentable invention, said: "We can not agree with the Circuit Court of Appeals that the causal connection between the unequal speeds of the stock and the wire, and the disturbance and rippling of the stock, and between the latter and the defective quality of the paper in high speeds of the machine, was so obvious that perception of it did not involve discovery which will support a patent. The fact that in a decade of an eager quest for higher speeds this important chain of circumstances had escaped observation, the fact that no one had applied a remedy for the consequent trouble until Eibel, and the final fact that, when he made known his discovery, all adopted his remedy, leave no doubt in our minds that what he saw and did was not obvious, and did involve discovery and invention."

As to the contention that the process is but the function of the tables and hence not patentable, it is well settled, of course, that the mere function or effect of a particular machine cannot be the subject-matter of a patent. But we do not think that the process claims here fall within the condemnation of this rule. They describe, not merely the function of a machine, but a new and useful process or method of separating particles upon a separating table. The rule which we think applicable is well stated in Curtis on Patents (4th Ed.) § 14, as follows: "A process may be altogether new, whether the machinery by which it is carried on be new or old. A new process may be invented or discovered, which may require the use of a newly-invented machine. In such case, if both the process and the machine were invented by the same person, he could take separate patents for them. A new process may be carried on by the use of an old machine, in a mode in which it was never used before. * * * In such a case, the patentability of the process in no degree depends upon the characteristic principle of the machine, although machinery is essential to the process, and although a particular machine may be required."

This statement of the rule was quoted with approval in Expanded Metal Co. v. Bradford, 214 U. S. 366, 382, 29 S. Ct. 652, 657, 53 L. Ed. 1034, by Mr. Justice Day, who also quoted with approval Mr. Justice Bradley's statement in the leading case of Cochrane v. Deener, 94 U. S. 780, 787, 24 L. Ed. 139, as follows: "That a process may be patentable, irrespective of the particular form of the instrumentalities used, cannot be disputed. * * * Either may be pointed out; but, if the patent is not confined to that particular tool or machine, the use of the others would be an infringement, the general process being the same. A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as is a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable, whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done

with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence."

The patented process is hard to describe so as to be readily understood by one not familiar with the art; but it was carefully investigated by the Patent Office, as the entries on the file wrappers abundantly show. Prior patents relied upon as anticipations were carefully considered and numerous changes were made in the claims before the patents were finally issued. It is well settled that in such case the presumption of patentability arising from the issuance of the patent is greatly strengthened. While, of course, the judgment of Patent Office officials in such a case is not absolutely binding on the court, it is entitled to great weight and is to be overcome only by clear proof that they were mistaken and that there is lack of patentable novelty. Imperial Bottle Cap & Machine Co. v. Crown Cork & Seal Co. (C. C. A. 4th) 139 F. 312; Rubenstein v. Slobotkin (D. C.) 33 F.(2d) 603; J. A. Mohr & Son v. Alliance Securities Co. (C. C. A. 9th) 14 F.(2d) 799.

In the hearing below the process of the patents was demonstrated before the District Judge by the use of tables installed and operated for his benefit. He thus had the advantage not only of seeing the witnesses and hearing them testify, but also of seeing the process in operation. When to the presumption arising because of the granting of the patents by the Patent Office is added the presumption in favor of the correctness of the findings of the District Judge, who saw the witnesses, heard them testify, and witnessed the demonstrations of the process, we certainly would not be justified in reversing his action unless satisfied that it was clearly wrong. U. S. Industrial Chemical Co. v. Theroz Co., supra; Diamond Patent Co. v. Webster Bros. et al. (C. C. A. 9th) 249 F. 155. We are not so satisfied, but on the contrary, think that it was correct.

We have carefully examined the patents relied upon as anticipations of the patents in suit; and, without going into the differences between the tables which they cover and those involved in these patents, it is sufficient to say that none of them covers or suggests the process which is the essence of the invention of complainants, and which they rely upon as being infringed. They cover separating tables, some involving wet and some dry processes of separation; most of them were carefully considered by the Patent Office, with the result that complainants were required to amend their application a number

of times so as not to cover features which they disclosed; and, as stated, none of them discloses the process upon which complainants rely as the essence of their invention.

On the question of infringement, there can be no doubt that the coal company is using the process covered by the patents in suit and is using it upon separating tables in all material respects similar to the tables patented by complainants. These tables are shaped like the tables of complainants, like them have a pervious top and metal cleats or riffles, and like them receive the mixture at one corner, which is higher than the corresponding corner of the opposite side and lower than the corresponding corner of the opposite end. They have the same sort of tailings riffle similarly located; and, while they do not have a banking bar, they accomplish the result of "forming an obstruction of concentrates" by additional elevation of the end of the table. The similarity is at once apparent if a drawing of the table used by the coal company is compared with the drawing heretofore set forth of the table of complainants.

It is perfectly clear from the record before us that the similarity of the tables of the coal company to those covered by complain-

ants' patents is by no means the result of accident. The coal company's tables are known as Arms Air Concentrators, because designed by one Ray W. Arms. They were manufactured, as above stated, by Roberts & Schaefer Company of Chicago. That company at one time, through a contract with the American Coal Cleaning Corporation, had the agency for the sale of the tables covered by the patents of complainants and employed Arms to visit the plant of complainants and examine into the working of their tables and also to assist in the installation of certain of the tables for the American Coal Company at McComas, W. Va. Arms thereafter went to work for Roberts & Schaefer Company regularly, while that company was advertising the sale of complainants' tables as agent and was negotiating with the American Coal Cleaning Corporation for a contract giving it the exclusive agency for their sale. A long period of negotiation followed, during which the Roberts & Schaefer Company found itself unable to agree upon any contract proposed by the Coal Cleaning Corporation. Finally all efforts to agree upon a contract were abandoned by the Roberts & Schaefer Company, and that company thereupon proceeded to bring out the Arms separator. The conclusion is irresistible that the ideas embodied therein were obtained from the tables and process covered by the patents of complainants.

■ It is not necessary to decide whether the Arms table constitutes an infringement of complainants' table, as the suit here is based upon the process claims of the patents. As these patents cover useful advancements in the art, however, and for that reason are to be given a liberal interpretation, there would seem to be strong reason for applying the doctrine of equivalents and treating the additional elevation of the Arms table as the mechanical equivalent of the banking bar of complainants' patent, as it accomplishes the same result in the same way. See Frick Co. v. Lindsay (C. C. A. 4th) 27 F.(2d) 59, 62, and cases there cited. But, without deciding this, it is perfectly clear that the process employed by defendants is precisely the same as the process discovered by complainants and covered by the process claims of their patents. It involves the forming of an obstruction of concentrates, beyond the strata of material containing tailings, across the imparted movement of the material; and this as stated above, is the essence of complainants' invention. It obtains the same result as complainants' process, in the same way. Although carried on by a mechanism very

slightly different from that used by complainants, it is clear that it is nothing more nor less than complainants' process. This being true, there can be no question that it infringes. See Expanded Metal Co. v. Bradford, supra.

■ This leaves only the question as to whether the court acquired jurisdiction to grant relief against the Roberts & Schaefer Company. We think that it did. It is true that the statute requires that suit for the infringement of letters patent shall be brought in the district of which defendant is a resident, or has committed acts of infringement and has a regular and established place of business. Judicial Code § 48, 28 USCA § 109; W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35 S. Ct. 458, 59 L. Ed. 808; Winterbottom v. Casey (D. C.) 283 F. 518. And the fact that one has assumed and is conducting the defense of a patent infringement suit in behalf of the defendant does not justify his being made a party defendant in derogation of this statute. Freeman-Sweet Co. v. Luminous Unit Co. (C. C. A. 7th) 264 F. 107; Van Kannel Revolving Door Co. v. Winton Hotel Co. (D. C.) 263 F. 988; Parsons Non-Skid Co. v. E. J. Willis Co. (C. C.) 176 F. 176; Bidwell v. Toledo Consol. St. R. Co. (C. C.) 72 F. 10; Radio Corporation of America v. E. J. Edmond & Co. (D. C.) 20 F.(2d) 929. This statutory provision, however, does not affect the jurisdiction of the court, which is conferred by section 24(7) of the Judicial Code, 28 USCA § 41(7). Its effect is to confer a privilege personal to the defendant, which he may waive. He waives it if he does not, prior to entering a general appearance in the action, take objection in the proper form to the jurisdiction of the court over him. Sandusky Foundry & Machine Co. v. De Lavaud (D. C.) 251 F. 631; Victor Talking Machine Co. v. Brunswick-Balke-Collender Co. (D. C.) 279 F. 758; U. S. Expansion Bolt Co. v. H. G. Kroncke Hardware Co. (D. C.) 216 F. 186; Thomson-Houston Electric Co. v. Electrose Mfg. Co. (C. C.) 155 F. 543; In re Moore, 209 U. S. 490, 501 et seq., 28 S. Ct. 585, 52 L. Ed. 904, 14 Ann. Cas. 1164; Thames & Mersey Marine Ins. Co. v. U. S., 237 U. S. 19, 35 S. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087.

■ The Roberts & Schaefer Company has clearly waived the benefit of the statute in this case. After an order was entered allowing amendment of the bill to make it a party, it filed a motion that it be dismissed from the suit for a number of reasons, among which was the following: "(c) Because the

plaintiff's bill makes no material and proper averments against it, charging infringement or participating in infringement of any of plaintiff's patents." This was nothing more nor less than a motion to dismiss the bill as to the Roberts & Schaefer Company, because of its failure to allege a cause of action against that company—a motion which under the new equity rules has taken the place of demurrer under the old practice. See Rule 29 (see 28 USCA. § 723). There can be no question that such a motion, which invokes the judgment of the court as to the sufficiency of the pleading, amounts to a general appearance. Even though it be coupled with a motion to dismiss on jurisdictional grounds, it waives the question of jurisdiction; for one will not be heard to invoke and deny jurisdiction in the same breath. Jones v. Andrews, 10 Wall. 327, 332, 19 L. Ed. 935; St. Louis & S. F. R. Co. v. McBride, 141 U. S. 127, 11 S. Ct. 982, 35 L. Ed. 659; Edgell v. Felder (C. C. A. 5th) 84 F. 69; Christensen v. Christensen (D. C.) 14 F.(2d) 475; Nelson v. Husted (C. C.) 182 F. 921; Cyclopedia of Federal Procedure, vol. 3, p. 427.

■ It is argued that no cause of action is alleged or relief asked against the Roberts & Schaefer Company in the bill, and that consequiently it was erroneous to award an injunction and accounting against that company even if it were a party to the cause. It appears, however, that the Roberts & Schaefer Company had installed the infringing tables and process for the coal company and that it was admittedly defending the suit in behalf of that company under a contract obligating it to do so. When this was shown in the court below, complainants were allowed to amend their bill to make the Roberts & Schaefer Company a defendant, and the record recites that this was "accordingly done." The pleadings seem not to have been actually amended in accordance with the order, but no inconvenience was caused to the company as a result of this neglect, nor has it been taken by surprise in any way. It knew that it was charged with infringing the patents which the coal company was charged in the bill with infringing, and that relief by way of injunction and accounting was asked against it. If it desires more specific information as to the matters as to which an accounting is asked, it may move for same before the District Judge; but the failure of the complainants actually to make the amendment to their complaint in accordance with the permission granted them is no ground, under the circumstances of this case, for dismissing the suit as to the company or for reversing the decree entered against it. On the contrary, even at this stage, complainants should be allowed to make the necessary amendment to conform the pleadings to the proofs or—what is the same thing—the court should consider the amendment as having been made in accordance with the permission granted. See Equity Rule 19 (see 28 USCA § 723); Grant Bros. Const. Co. v. U. S., 232 U. S. 647, 34 S. Ct. 452, 58 L. Ed. 776; National Waterworks Co. v. Kansas City (C. C. A. 8th) 62 F. 853, 863, 27 L. R. A. 827; Crescent Milling Co. v. H. N. Strait Mfg. Co. (C. C. A. 8th) 227 F. 804; 21 R. C. L. 577, 578, and cases cited; note L. R. A. 1016D, at page 843 et seq.

The decree of the court below will accordingly be affirmed.

Affirmed.