SUTTON, STEELE & STEELE et al. v. GULF SMOKELESS COAL CO. et al.

No. 417.

District Court, S. D. West Virginia.
Oct. 28, 1933.

A. S. Pattison, of Washington, D. C., D. J. F. Strother, of Welch, W. Va., and George Richardson, Jr., of Bluefield, W. Va., for complainants.

Price, Smith & Spilman and Russell S. Ritz, all of Charleston, W. Va., and Fisher, Boyden, Bell, Boyd, & Marshall, of Chicago, Ill., for defendants.

McCLINTIC, District Judge.

This is a suit instituted by the complainants against Gulf Smokeless Coal Company, a corporation, in 1926, for the purpose of obtaining an injunction to restrain the alleged infringement by Gulf Smokeless Coal Company of certain patent rights claimed by the complainants, Sutton, Steele & Steele, and their licensee, American Coal Cleaning Cor-

420

poration; to require an accounting by the defendant by reason of its alleged infringement, and to recover gains, profits, and advantages accruing to the defendant by reason of its alleged infringement and damages resulting therefrom to the complainants. Roberts & Schaefer Company appeared in the proceeding, assumed the defense of the suit, and was made a party defendant. There was entered in the cause on July 20, 1928, a decree adjudging the patents of the complainants valid and infringed by the defendants Gulf Smokeless Coal Company and Roberts & Schaefer Company. That decree provided that the complainants recover from the defendants the profits, gains, and advantages which the said defendants had received or made or which had arisen or accrued to them by reason of the complainants' inventions and letters patent and also the damages which the complainants had suffered by reason of the infringement; and the cause was referred to Luther G. Scott as master to ascertain, state, and report an account of the extent of said infringement, of the profits, gains, and advantages which the said defendants had received or which had arisen or accrued by reason of their infringement, and to assess the damages suffered by the complainants by reason of said infringement. Further, by that decree, the defendants Gulf Smokeless Coal Company and Roberts & Schaefer Company were enjoined from making, selling, or using any device or apparatus infringing the patent rights of the complainants.

From the said decree, an appeal was prosecuted to the United States Circuit Court of Appeals, Fourth Circuit, where the cause was heard as case No. 2825 and decided on October 15, 1929, 35 F.(2d) 433. The said appeal presented three questions: (1) Whether the patents sued on were valid; (2) if so, whether the coal company had been guilty of infringement; and (3) whether the court acquired jurisdiction of Roberts & Schaefer Company. Each of the three questions was resolved in the affirmative, and the decree of this court was accordingly affirmed. A petition for rehearing was filed, and, by per curiam opinion handed down November 18, 1929, denied. (C. C. A.) 36 F.(2d) 224. On December 18, 1929, a petition for certiorari was filed in the Supreme Court of the United States; but this petition was denied, 280 U. S. 609, 50 S. Ct. 158, 74 L. Ed. 652, and the mandate of the Circuit Court of Appeals received in the clerk's office of this court on January 17, 1930.

Thereupon Luther G. Scott, as special master of this court, proceeded to execute the decree of reference, holding hearings, taking testimony, and considering argument, as set forth in his report filed herein. Pending that hearing, a petition was filed in this court by the defendants, seeking to limit and confine the inquiry before the master to the infringement of complainants' patents at the Covel Mine of the defendant Gulf Smokeless Coal Company. That petition was denied.

To the report of the master commissioner both the complainants and the defendants made timely exceptions, the complainants submitting fourteen exceptions, Gulf Smokeless Coal Company two exceptions, and Roberts & Schaefer Company nine exceptions. Upon their several exceptions counsel for the respective parties have submitted their briefs and oral argument.

Much emphasis is placed upon the bona fides vel non of the defendant Roberts & Schaefer Company in respect to their infringement. And properly so; since, if they were innocent infringers, they should be held to one measure of accountability and to another if they have, in reckless disregard of the rights of others, deliberately for their own profit infringed upon these patent rights. consideration of the whole case, the testimony of the witnesses taken ore tenus in the infringement suit as well as the further evidence taken before the master, the circumstances under which the defendant was informed of these cleaning tables and plans of the complainants to develop the business of producing and selling them, the difficulty in reaching an agreement as to the compensation to Roberts & Schaefer Company for selling the same under a contract over an extended period, the reluctance of the witness Arms to agree to the proposed contract and especially to the payment of consideration for sale of auxiliary equipment, the development of infringing tables while continuing to sell those of the complainants, the sale of infringing tables after notice from the complainants of their claim that these tables did infringe their patent rights and during the long period the issues between the parties were undetermined at a price scarcely in excess of what is now represented to be the cost of production, so as to take all available business with no appreciable profit to be accounted for should the issue of infringement be decided adversely—a full consideration of all these things can leave no doubt of the fact, clearly apparent from the record in this case, that the defendant Roberts & Schaefer Company designedly and willfully set about contriving

means to take from the complainants business which they could not obtain under acceptable contractual terms, and so cannot be regarded as innocent infringers.

It appears that the defendant Roberts & Schaefer Company manufactured and sold to coal operators in the United States 96 tables held to infringe complainants' patent rights, and that 9 such tables were manufactured and sold for use outside of the United States. Inasmuch as the infringement by this defendant was through manufacturing and selling, all of which was accomplished, and to the advantage of the defendant, in the United States, no sufficient reason occurs to me why the defendant should not be held to account for all tables so manufactured and sold by it, and, accordingly, the first exception by the complainants will be sustained to the extent of holding the defendant Roberts & Schaefer Company accountable for 105 machines instead of 96, as found by the special master.

Finding, as I do, that this defendant deliberately and wrongfully set about the infringement for which it is called to an accounting, I cannot feel that it is entitled to be accorded those considerations recognized in proper cases in respect to the innocent infringement of patent rights, and I am of opinion to sustain the plaintiffs' exceptions 2, 3, 4, and 5 as to the allowance of depreciation, interest on the investment of Roberts & Schaefer Company in the building and equipment used for producing the infringing tables, and apportionment of profits on account of other patented parts included in the infringing tables; and by the same token I would overrule the defendants' exceptions 1 and 2. This is more clearly proper in view of the fact, as appears from the evidence, that the profits accounted for were those produced only by the manufacture and sale of these tables, and did not include any profits on auxiliary equipment manufactured or sold in connection with these tables, from which this defendant undoubtedly derived substantial profits in addition to those shown in its accounting. But this becomes of little practical importance by reason of the larger recovery for general damages which undoubtedly will be taken instead of the recovery of profits.

The special master's finding that the 96 tables sold by the defendant Roberts & Schaefer Company represented sales lost to the complainants is sustained, except that the number of sales, as heretofore stated, is increased to 105. It plainly appears from the evidence that the complainants were ready and prepared to supply tables for the infringing sales, that their patent rights gave them a monopoly in the field until invaded by the defendants' infringement, and that this was done because the industry demanded such a process as complainants' patents covered.

Exact ascertainment of the damage resulting to complainants by reason of the infringing sales is, of course, not only difficult but impossible of accomplishment, but it is perfectly apparent from all the evidence that the complainants were seriously and greatly damaged in the exploitation of their patent rights by the infringing sales contrived in furtherance of a sales campaign initiated for the development of complainants' business. The exact damage not being proved or susceptible of calculation and determination with reasonable certainty, the special master properly fixed an amount of recovery by way of general damages. USCA title 35, § 70. The amount fixed, viz., $1,000 for each of the 96 machines sold, is certainly not an excessive allowance, and is accordingly, sustained, but as to 105 machines instead of 96.

In addition to the direct damages attributable to sale of infringing tables, the complainants claim a considerable sum by way of damages in the nature of lost profits on sales of auxiliary equipment to be used in connection with the cleaning tables. There is no doubt that the tables required for their operation considerable auxiliary equipment, it being estimated by one witness that the sales value of such equipment would be approximately $15,000 for each cleaning table, and this estimate was corroborated by the special master, who found that, in connection with 63 of the infringing tables, auxiliary equipment and engineering services were provided by the defendant at a price averaging $16,233 per table. It is apparent also that such sales were profitable, and division of the profit resulting therefrom was the rock upon which broke the negotiations between American Coal Cleaning Corporation and Roberts & Schaefer Company for sales representation. The sale of this auxiliary equipment was in line with the established business of Roberts & Schaefer Company, and it is perfectly apparent that its interest might have been advanced by selling the infringing tables at a small enough profit to capture the markets and augment that profit through sales of additional equipment. But the claim here asserted is for indirect damages; and, while it is presented with much plausibility, it does not appear to have been substantiated with such proof as is necessary to sustain a recov-

ery of indirect damages. Accordingly, the complainants' seventh exception to the special master's report should be overruled.

■ In like manner I find that the complainants have failed to establish their claim for damages in their alleged loss suffered by reason of reduction in the price of their tables because of the competition of defendants' infringing machines and would overrule complainants' exception No. 8. While it does appear that the defendant put its machines upon the market at a price greatly below the list price of the complainants' tables, and that the complainants in their competitive sales thereafter did sell their tables at a price below the list price, it does not appear from the evidence with that certainty or sufficiency necessary to sustain a recovery of damages just what reduction in price was made on the several sales shown in evidence, nor that the offering of the infringing tables in the market at a lower price forced the reduction. It is significant that no evidence is offered to show re-establishment of the higher price price claimed by complainants after the infringing sales were enjoined.

This proceeding, commenced in June, 1926, has of necessity entailed very considerable litigation expense, $27,109.63 in connection with the infringement suit and the further sum of $16,510.08 in connection with the accounting up to June 1, 1931, or a total of $43,619.71. This litigation was made necessary by the defendant's infringement continued for a great while after full notice of complainants' claim. The nature and extent of the trespass provoked litigation necessarily attended by considerable expense; and, while such expense is not commonly allowed as an item of recovery in such suits, it is not to be disregarded in determining the sufficiency of general damages allowed on the basis of proved losses. Having in mind the deliberate nature of defendant's infringement in this case and the showing made in respect to complainants' expense in prosecuting this suit, I do not think the special award of $14,400 is enough, but would increase that to 40 per cent. of the principal sum, viz., $105,000, making a total of $147,000.

The award of general damages, being for the infringing sales, should carry interest from the date such infringement ceased. The special master's award should, accordingly, be amended to include interest upon the full recovery by way of general damages, viz., $1,000 for each of the 105 machines sold from October 15, 1929, the date on which the infringement ceased. And the additional award of 40 per cent. should bear interest from the date of the master's report.

■■ The complainants in this case seek to recover the gains, advantages, and profits resulting to the defendant Roberts & Schaefer Company from their infringement by manufacturing and selling, and in addition the gains, profits, and advantages resulting to the Gulf Smokeless Coal Company and other vendees of Roberts & Schaefer Company from their infringement upon complainants' patent rights through use of the infringing tables. Undoubtedly the complainants are entitled to recover the profits shown to have resulted from the infringement by manufacture and sale, and, in addition thereto, profits shown to have resulted from infringement by use. The right to the use of the patented process is as much the exclusive property of complainants as is the right to manufacture and sell. But, if the complainants should receive and accept a recovery by way of general damages for the sale of a specific table, such acceptance would operate to adopt the sale of that table as a sale by complainants themselves, and therefore preclude any recovery for its use. Only one user of the infringing tables is a party to this suit. It appears that Roberts & Schaefer Company in selling these tables to the various users agreed to protect them in respect to patent rights, but it does not appear that Roberts & Schaefer Company participated to any extent in such profits or advantages as may have resulted to their vendees from the use of these tables. For this reason there can be no recovery in this suit from Roberts & Schaefer Company of gains or profits resulting to the various coal companies to whom they sold these tables, notwithstanding their use was an infringement of the complainants' rights. Such a recovery could not be regarded as damages to be had from a contributory infringer as from a joint tort-feasor. There being no evidence that their tables were let upon a royalty basis by the complainants, it could hardly be said that their use by purchasers from Roberts & Schaefer Company damaged the complainants beyond such profits as the sale of those tables would have yielded.

The defendant Gulf Smokeless Coal Company purchased from Roberts & Schaefer Company and used 6 tables, which have been held to infringe the complainants' patents. With these tables coal to the amount of 386,194 tons was treated, and, if you would take the statement of the defendant, at a loss of more than $175,000. But, notwithstanding

such loss, and with notice that the complainants claimed the tables infringed their patent rights, they were continued in use down to the time of the accounting, and that notwithstanding the injunction order. It is inconceivable that such use would have continued, and especially after the injunction of this court had issued, if it were not profitable and advantageous. The witness Tams sets up a conceded advantage or profit amounting to 20 cents a ton, which, however, he more than offsets by operating costs, depreciation, interest, etc.

■ An accountant representing the complainants examined the books and records of that defendant, and reports a net profit attributable to the use of these tables amounting to $160,292.21. This finding appears to reflect a record profit, but it seems to have been produced by the cleaning and grading of the coal, with the result that it is impossible to allocate any definite part of such profit to the use of the infringing tables. The special master reported that there was no possible way by which the benefits accruing from the treatment of this coal could be accurately calculated, but, because it would appear that there were gains and advantages resulting to this defendant from its use of the infringing tables, the special master allowed to the complainants for a reasonable sum as profits 1½ cents per ton; that being the amount he had arrived at as a reasonable royalty recoverable by complainants for the infringing use of tables in violation of their patent rights if recovery should be allowed on that basis. The master appears, however, to have based that allowance upon the selling price and life of the tables rather than upon the advantages accruing to the coal from use of the tables. So I do not think that a proper unit of calculation to be used in determining a reasonable recovery from Gulf Smokeless Coal Company for advantages resulting from its infringing use of these tables.

■ In considering generally the advantages resulting from the use of the tables in question, the special master found a gross advantage of 32½ cents per ton to be a fair average result. To obtain this advantage there was, of course, the expense of operation, and this does not appear to have been shown with certainty. Having in mind the advantages which undoubtedly accrued to this defendant from the use of these tables, I am of opinion, from the evidence before me, to allow the complainants a recovery from Gulf Smokeless Coal Company of $12,551.30. And

I would allow interest upon this sum, just as in the master's report, from January 1, 1930.

From what has been said, it follows that, if the complainants would take this recovery from Gulf Smokeless Coal Company, then they must forego the recovery in the amount of $1,000 each by way of general damages for the sale of the tables sold to this defendant.

The cost of the accounting should be paid by the defendants.

Let a decree be prepared passing upon the several exceptions in accordance with the holding here indicated.