**BOWSER, INC., Plaintiff,**

v.

**RICHMOND ENGINEERING COMPANY, Incorporated, Defendant.**

**Civ. A. No. 2424.**

United States District Court
E. D. Virginia,
Richmond Division.
July 9, 1958.

Robert T. Barton, Jr., Richmond, Va., Clarence H. Threedy, Chicago, Ill., Bernard Hoban, Chicago Ill., for plaintiff.

Ralph H. Ferrell, Jr., Richmond, Va., Conder C. Henry, Washington, D. C., for defendant.

HUTCHESON, Chief Judge.

This matter came before the court on the complaint of the plaintiff against defendant for infringement by defendant of claims 1, 2, 3 and 5 of United States Letters Patent No. Re-24,136 issued to Harvey E. Marvel on April 3, 1956, on a water fuel separator, and on defendant's amended counterclaim for declaratory judgment with respect to infringement and validity of the claims of United States Patent 2,800,232 granted to Harvey E. Marvel on July 23, 1957, on a separator for liquids and plaintiff's reply to such counterclaim charging defendant with infringement of claim 3 of said patent 2,800,232.

Upon trial of said cause in open court on December 5 and 6, 1957, on the issues of misuse and fraud, and upon the trial of said cause in open court on February 5 to 9, 1958, on the issues of infringement and validity, and upon full consideration of the testimony, pleadings, stipulations, depositions, demonstrations, exhibits, briefs, oral arguments, and the motions made in this cause, the court finds as follows:

### Findings of Fact

1. Plaintiff, Bowser, Inc., is an Indiana corporation with its principal place of business at Fort Wayne, Indiana.

2. Defendant, Richmond Engineering Company, Incorporated, is a Virginia corporation having its principal place of business at Richmond, Virginia.

3. Defendant is charged with infringement of claims 1, 2, 3 and 5 of Reissue Patent 24,136 on a water fuel separator issued April 3, 1956, to plain-

tiff as assignee of the inventor, Harvey E. Marvel.

4. Defendant by its amended counterclaim seeks a declaratory judgment as to the infringement and validity of Patent 2,800,232 on a separator for liquids issued July 23, 1957, to plaintiff as assignee of the inventor Harvey E. Marvel.

5. Plaintiff by its reply to said amended counterclaim charges defendant with infringement of claim 3 of Patent 2,800,232.

6. Defendant by its amended answer and counterclaim charges plaintiff with misuse of plaintiff's patent rights, fraud in the procurement of Patent 2,800,232, and unclean hands.

### Re Reissue Patent 24,136

7. Reissue patent 24,136 is a reissue of Patent No. 2,725,986 granted on an application filed August 25, 1950.

8. An object of the invention shown, described and claimed in the reissue patent in suit is to separate the minutest particles of water from emulsified fuel, such as aviation gasoline and jet fuel (JP–4 and 5); to deflect by means of a shroud exterior of a separating cartridge having separating media of compressed resin-bonded fibrous material the separated water droplets downwardly to a drain, utilizing the shroud to arrest or restrain the separated droplets from breaking away from their downward path of movement to again become emulsified with the dry or water-free fuel, thus resulting in removal of the water with 100% efficiency without any appreciable differential in pressure within the separator and with no fuel in the water separated from the water-fuel emulsion.

9. The court had the benefit of viewing the operation of a model of the device of the reissue patent and also viewing a moving picture of such model as well as a model of the reissue patent with a shroud or strainer omitted, and hearing explanatory testimony in connection therewith. The court further had the benefit of witnessing the demonstration of defendant's device at defendant's plant in Richmond, Virginia and hearing explanatory testimony in connection therewith.

### Re Infringement of Reissue Claims 1, 2, 3 and 5

10. In the defendant's device and the device of the reissue patent, the emulsified fuel (water and fuel) is admitted under pressure from a supply tank to the separator tank through the fuel inlet to an inlet chamber. From the inlet chamber the emulsified fuel under pressure passes through a port in the deck plate into the separator cartridge or cartridges supported by the deck plate and thence through the resin-bonded fibrous filter material. The resin-bonded fibrous filter material coalesces or separates the water from the fuel prior to the time that the fuel contacts the straining means or shroud. As the water droplets contact the shroud they are deflected downwardly while the dry (water-free) fuel under pressure passes from the separator tank through the fuel outlet to a storage tank. Such water droplets by the straining means or shroud are deflected downwardly between the shroud and the separating cartridge to the lower end of the shroud extending below the lower end of the cartridge into the drain area where the water droplets from the drain area of the tank are drained. The shroud restrains the water droplets from breaking away from their path of downward movement and again becoming emulsified with the outgoing dry fuel.

11. Defendant's device and the device of the reissue patent in suit each include:

A water-fuel separator comprising a tank
having a fuel inlet
and a fuel outlet
  said fuel outlet being disposed in the upper portion of said tank and
a water drain
  disposed in the lower portion of said tank,

a deck plate
disposed substantially horizontally in said tank to prevent communication between said fuel inlet and fuel outlet,

a water and fuel separating cartridge
connected to the plate said plate having

a port
therein whereby a mixture of water and fuel may flow into the cartridge from said fuel inlet,

said cartridge comprising
resin-bonded fibrous filter material for coalescing particles of water in the fuel into drops where a mixture of water and fuel passes there-through, and

straining means
disposed externally of said cartridge to receive the mixture issuing from said separating cartridge for retaining the water drops so that they may flow downwardly toward the lower portion of the tank while allowing the fuel to flow through the straining means to the fuel outlet.

12. The defendant's water-fuel separator includes the combination defined by each of claims 1, 2, 3 and 5 and accomplishes substantially the same result as that accomplished by the combination of such claims.

13. Defendant began to sell its water-fuel separator charged to infringe claims 1, 2, 3 and 5 of the reissue patent in suit, sometime in the Fall of 1955.

14. Defendant sells its water fuel separators to contractors; it produced no records, books of account, or other documents in support of its allegation that it sells to the United States Government.

In re File Wrapper Estoppel

15. No acts, expressed or implied, were taken by the patentee Marvel of the reissue patent in suit or by his patent solicitor, during the prosecution of the Marvel application for the original patent 2,725,986 or that of such reissue patent, before the United States Patent Office which would constitute a file wrapper estoppel.

In re Intervening Rights

16. The elements set forth in the claims of the original patent and those of the reissue patent are arranged in substantially the same relation with respect to each other and function in substantially the same manner to accomplish substantially the same results.

17. Claims 1, 2, 3 and 5 of the reissue patent 24,136 are substantially identical to claims 1, 2, 3 and 5 of the original patent 2,725,986.

Re Issue of the Validity of Claims 1, 2, 3 and 5 of Reissue Patent 24,136

18. Plaintiff prior to the issuance of the reissue patent in suit has manufactured and sold and is still manufacturing and selling water-fuel separators embodying the structure shown and described in such reissue patent and the original patent of which the reissue patent in suit is a reissue.

19. Plaintiff's water-fuel separator has met with commercial success and has been approved and accepted by the United States Army and Air Force over water-fuel separators of competitors of plaintiff.

20. The structure covered by the claims in issue has greater efficiencies than the prior art devices.

21. Defendant admits that claims 1, 2, 3 and 5 of the reissue patent in suit are not anticipated by any of the multiplicity of patents (a total of 61) relied upon by defendant.

22. Defendant has cited sixty-one United States Patents, several foreign patents, and other publications to show lack of invention and the state of the art.

23. Of such patents, the most emphasis is placed by defendant on the following patents:

| Hills | 1,787,577 |
| Munro | 1,601,502 |
| Glover | 1,624,832 |
| Villavaso | 1,791,333 |

24. The Hills patent was a file wrapper reference against the application on which original patent 2,795,586 was granted and which is now Reissue patent 24,136, and therefore its effect as a reference is greatly weakened.

25. The prior art patents cited by defendant which were not file wrapper references are no more pertinent than the Hills patent which was a file wrapper reference.

26. No prior art patent relied upon by defendant taken singly or collectively discloses a water-fuel separator which accomplishes *all* of the following results: (1) removal of water from emulsified fuel with 100% efficiency (2) without any appreciable differential in pressure within the separator and consequently no loss of energy on the part of the fuel pump and (3) no fuel in the water separated from the water-fuel emulsion.

27. No prior art patent relied upon by defendant considered singly or collectively shows or suggests a water-fuel separator capable of the performance of the above results enumerated in Paragraph 26 hereof, with the same degree of efficiency for jet fuel (JP-4 and 5) as for aviation gasoline.

28. The patentee Marvel of the reissue patent in suit was the first to produce a water-fuel separator which accomplished all the following results: (1) removal of water from emulsified fuel with 100% efficiency; (2) without any appreciable differential in pressure within the separator and consequently no loss of energy on the part of the fuel pump and (3) with no fuel in the water separated from the water-fuel emulsion.

29. The film exhibited to the court fully demonstrates the cooperative function of the resin-bonded filter material and the shroud; neither alone solved the problem confronting Marvel; it required their joint action; it is only by the joint coaction of the elements defined in claims 1, 2, 3 and 5 of the reissue patent in suit that the highly efficient and effective results of the water-fuel separator there disclosed are accomplished, making it acceptable over water-fuel separators of plaintiff's competitors and the prior art.

30. No testimony was adduced by defendant to show that any device of the prior art patents (a total of sixty-one) was capable of the performance exhibited by the demonstration of the patented device and by the moving picture.

31. Highly trained and skilled engineers of the Fram Corporation and Werner Lewis Corporation as well as defendant's engineer, were working on various approaches to each of the various results achieved by Marvel; none of them, including defendant, produced a water-fuel separator capable of the performance requirements imposed on the water-fuel separator of the Marvel invention.

32. Defendant's engineer cast aside his own patented inventions *in* water-fuel separators and produced a water-fuel separator which followed the teaching of the Marvel invention.

33. A perusal of all the prior art shows that the claims of the Marvel reissue patent in issue define a new combination of elements (be they new or old) which produce a new and useful result and function which those skilled in the art were working to attain but after repeated efforts failed.

In re Double Patenting

34. Plaintiff who is the assignee of the reissue patent 24,136 is also the assignee of the Mankin patent 2,657,808.

35. The Marvel original patent 2,-725,986 was granted on an application having as its filing date August 25, 1950, a date prior to the date of the filing, to-wit, October 12, 1950, on which the Mankin patent 2,657,808 was issued.

36. The claims of the Mankin patent are not for the same invention as the claims of the reissue patent.

37. A device made in accordance with the claims of the reissue patent would not be infringed by the claims of the Mankin patent.

Re Patent 2,800,232

38. The fiber glass material making up the coalescing medium of the sepa-

rating cartridge of patent 2,800,232 is compressed to a predetermined density prior to its installation in the cartridge.

39. The patentee Marvel was the first to have found that a porous mass of fiber glass material forcibly compressed to a predetermined density and maintained in that condition by a binder would when incorporated in a separator cartridge for water-fuel separators, meet the performance requirements for not only separating water 100% from gasoline but also from jet fuel with a minimum differential pressure and with no fuel in the water separated from the water-fuel emulsion.

40. Defendant's separating cartridge includes a coalescing member comprising a porous mass of fiber glass forcibly compressed to a predetermined density and with a binder for maintaining said predetermined density.

41. The prior art relied upon by defendant does not disclose nor suggest a cartridge of the construction defined by claim 3 of patent 2,800,232.

42. The most pertinent prior art patent relied upon by defendant is Patent 2,456,245 issued to McDermott, which was a file wrapper reference in the application on which patent 2,800,232 issued.

In re Defendant's Claim of Fraud

43. On December 14, 1954, the patentee Marvel of Patent 2,800,232 through his attorney filed an amendment in connection with the application for said patent and made the following representations to the Patent Office:

"It is a known fact that water in a petroleum fuel, especially aviation fuel, is undesirable because the water will freeze as an airplane gains altitude thus clogging fuel lines and strainers causing engine failure. Certain types of equipment have been devised in an attempt to completely eliminate the water from the fuel oil, but as of to date none have been completely satisfactory. The assignee of this invention has spent thousands of dollars in working on a solution for this problem.

"Experiments were made with many materials, but each had defects which rendered it unfit for the required service.

"Even experiments made with plain glass fiber material were unsatisfactory. The predensified, resin-bonded material forming the subject matter of this application is an efficient medium for stripping water from water-oil emulsions. It is respectfully submitted that this is a patentable invention.

"The applicant's invention was presented to the Engineer Research and Development Laboratories at Fort Belvoir, Virginia for testing in order to determine if it would meet military specification MIL–S–254A, which required that 99.99% water be removed from aviation jet fuel, JP–4.

"On May 3, 1954 the Corps of Engineers, U. S. Army, Engineer Research and Development Laboratories, Fort Belvoir, Virginia, issued a report to applicant's assignee approving the performance and suitability of applicant's invention. This report is identified as: Interim Engineering Test Report on Bowser 600 GPM Water Separator for JP–4 Jet Fuel Service, Project 8–53–03–003.

"Attached to this amendment, and marked 'Exhibit A', are pages 12 to 25 of the above mentioned test report. The Examiner will note from this test report *that the water removal efficiency is 100%*, and that the differential pressure is very low; also, there was no fuel in the water separated from the water-oil emulsion. *This is the first time such efficiencies have been attained with any medium in the field of fuel-water emulsion separation.*

\* \* \* \* \*

"Applicant would like to emphasize the fact that the element em-

ploying his invention successfully passed the requirements of military specification MIL–S–254a, whereas many others have failed to produce a cartridge to meet these military specifications.

"It is respectfully submitted that the above mentioned report is persuasive evidence of the patentability of applicant's invention in that it constitutes an important improvement in the development in which many inventors have participated without making such improvement. Brill v. North Jersey St. Ry. Co., [C.C.] 124 F. 778."

44. On June 11, 1956, the patentee Marvel through his attorney in connection with the prosecution of the application on which Patent 2,800,232 issued, represented to the Patent Office that:

"The problem faced by applicant was to remove 99.95% of all the water from JP–4. Applicant solved this problem by predensification or precompression of the fibrous material which provided a cartridge having substantially uniform density throughout its entire length.

\* \* \* \* \* \*

"The Examiner's statement that Applicant's device does not show or produce a new or unexpected result is not clearly understood. It would certainly appear that a cartridge which would remove or strip water 100%, and the fact that the element employing Applicant's invention successfully passed military specification MIL–S–254A (see interim engineering test report on Bowser 600 GPM water separator for JP–4 Jet Fuel Service, Project 8–53–03–003, submitted with last amendment), while other competitive units failed the test, is convincing evidence of a new and unexpected result (see paragraph 2 of engineering bulletin 54–19 issued on May 5, 1954 by the Department of Army, submitted with the last amendment)."

45. Marvel's solicitor at the time he made the statements to the Patent Office Examiner as contained in the arguments filed in connection with the application on which Patent 2,800,232 issued, believed such statements to be true and had no reason to believe them to be untrue and, if such statements were untrue (which they were not), he had no knowledge of such fact.

In Re Alleged Misuse

46. Plaintiff on September 7, 1954, granted a non-exclusive and non-transferable license to American Pipe & Steel Corporation to make, use and vend throughout the United States dehydrators of the kind described in Letters Patents 2,657,808 and applications for Letters Patents, Serial Nos. 181,391 and 397,195, but not the filter cartridges. By such license, American agreed that it would use in all such dehydrators manufactured and sold by it only filter cartridges manufactured by Bowser, and Bowser agreed to sell such filter cartridges at a price which would equal Bowser's manufacturing cost plus 6% royalty plus 8% for general and administrative expenses and 10% profit, f. o. b. Bowser's plant.

47. Plaintiff and American Pipe & Steel Corporation by a letter dated July 9, 1957, modified the license of September 7, 1954, by providing that American Pipe & Steel corporation may purchase filter cartridges from any source.

48. Subsequently, on July 24, 1957, the license of September 7, 1954, as modified by the letter of July 9, 1957, was terminated and a new license entered into by and between plaintiff and American Pipe & Steel Corporation, whereby American Pipe & Steel Corporation was given a non-exclusive, non-transferable license to make, use and sell throughout the United States dehydrators and filter cartridges embodying the construction shown, described and claimed in Patents 2,657,808, 2,725,986 reissued as Reissue Patent 24,136, and 2,800,232, and in which American Pipe & Steel Corporation was given the right

to purchase the filter cartridges from any source.

49. There is no license or contract between plaintiff and defendant with respect to plaintiff's patents nor any agreement or understanding that defendant was not to use or deal in the goods, wares, or merchandise of a competitor of plaintiff or that defendant could not make and sell its own water-fuel separator and/or cartridge therefor.

50. The equities in this suit are found to be with plaintiff and plaintiff shall prevail over the defendant.

Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter and has venue of this action.

2. Reissue Patent 24,136 and Patent 2,800,232 are owned by plaintiff.

3. Section 282 of the 1952 Patent Act, 35 U.S.C.A. § 282, provides that patents shall be presumed valid.

4. A Patent Office Examiner is warranted in granting a patent upon a showing that the structure covered by a claim has greater efficiencies than the prior art devices. Minnesota Mining & Mfg. Co. v. Coe, D.C., 49 F.Supp. 706; Webster Loom Co. v. Higgins, 105 U.S. 580, 581–582, 26 L.Ed. 1177.

5. Such statutory presumption of validity is entitled to greater weight where the most pertinent patents relied upon by defendant to show lack of invention are no better than those considered and decided upon by the Patent Office Examiner during the prosecution of the application on which the patent in suit issued. Otto v. Koopers Inc., 4 Cir., 246 F.2d 789, at page 800.

6. The admitted commercial success of plaintiff's water-fuel separator further strengthens the statutory presumption of validity of the patents in suit. Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, at page 279, 64 S.Ct. 593, at page 595, 88 L.Ed. 721; Forestek Plating & Mfg. Co. v. Knapp-Monarch, 6 Cir., 106 F.2d 554, at page 558, Par. 4; Electric Machinery Mfg. Co. v. General Electric Co., 2 Cir., 88 F.2d 11, at page 14.

7. The statutory presumption of validity of the patents in suit is further strengthened by the fact that defendant preferred to follow the teaching of such patents rather than the prior art. Ackermans v. General Motors Corp., 4 Cir., 202 F.2d 642, at page 645; Beadle v. F. W. Woolworth, D.C., 17 F.Supp. 830, at page 836, Par. 3; Diamond Rubber Co. of New York v. Consolidated Rubber Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; General Electric Co. v. Wagner Electric Mfg. Co., 2 Cir., 130 F. 772.

8. The presumption of validity is entitled to greater weight when the principal art cited by defendant has been considered and rejected by the Patent Office. Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 106 F.2d 554, at page 558; Gulf Smokeless Coal Co. v. Sutton etc., 4 Cir., 35 F.2d 433; Chesapeake & O. Ry. Co. v. Kaltenbach, 4 Cir., 95 F.2d 801, at page 804, par. 1; Otto v. Koopers Co., Inc., 4 Cir., 246 F.2d 789, at page 800.

9. The fact that a large number of patents is cited by an infringer serves to emphasize long search for the patented device and demonstrates the unobviousness of the invention to one skilled in the art. Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, at page 916; Hall Laboratories, Inc., v. Kingan, Inc., D.C.Va., 146 F.Supp. 801.

10. Patentable invention is present unless the subject matter as a whole would have been obvious to an ordinary person having skill in the art. 35 U.S.C. § 282.

11. The judgment of the Patent Office officials is entitled to great weight and is to be overcome only by clear proof, and every reasonable doubt should be resolved against him who attacks a patent.

12. Prior paper patents have little, if any, weight on the question of patentable invention, as distinguished from anticipation. Campbell v. Mueller,

6 Cir., 159 F.2d 803, at page 809; Wahl Clipper Corp. v. Andis, 7 Cir., 66 F.2d 162, at page 165.

13. To the presumption of validity attaching to the grant of the patent by the Patent Office, there is the additional presumption arising from the fact that the invention filled a want arising from a new situation, that it entered into immediate use, and that it met with pronounced commercial success. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Pangborn Corporation v. W. W. Sly Mfg. Co., 4 Cir., 284 F. 217. And in addition to this is the presumption arising from the imitation of the patented article by the manufacturer of the alleged infringing device. Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 4 Cir., 40 F.2d 910, at page 914; Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778, at pages 781, 782.

14. Mere arguments of a patent solicitor before the Patent Office do not constitute file wrapper estoppel especially where such arguments are based upon limitations not carried into the claims. Denominational Envelope Co. v. Duplex Envelope Co., 4 Cir., 80 F.2d 186, at page 192, Par. 4; Byers Machine Co. v. Keystone Driller Co., 6 Cir., 44 F.2d 283, at page 284, Par. 2-4; Oates v. Camp, 4 Cir., 83 F.2d 111, at page 114, Par. 2; Auto Pneumatic Action Co. v. Kindler, 2 Cir., 247 F. 323, 328.

15. The doctrine of double patenting is not apropos in this case. Montgomery Ward & Co. v. Gibbs, 4 Cir., 27 F.2d 466, at page 468; Traitel Marble v. U. T. Hungerford Brass and Copper Co., 2 Cir., 22 F.2d 259, at page 262, Par. 6; Federal Telephone & Radio Corp. v. Associated Tel. & Tel. Co., D.C.Del., 99 F. Supp. 535, at page 542, Par. 13; Van Heusen Products v. Earl & Wilson, D.C., 300 F. 922, at page 936.

16. The doctrine of intervening rights is not apropos in this case.

17. Claims 1, 2, 3 and 5 of Reissue Patent 24,136 and claim 3 of Patent 2,800,232 are valid.

18. Plaintiff has not been guilty of fraud or misuse in connection with Reissue Patent 24,136 and Patent 2,800,232 or either of them.

19. In its essential features the water-fuel separator manufactured and sold by defendant is so closely similar to the device covered by claims 1, 2, 3 and 5 of the Reissue Patent 24,136 and claim 3 of Patent 2,800,232 that its manufacture and sale constitutes an infringement of such claims.

20. Plaintiff is entitled to an injunction restraining defendant from further infringement of claims 1, 2, 3 and 5 of Reissue Patent 24,136 and claim 3 of Patent 2,800,232 and to an accounting against defendant for general damages and/or profits occasioned by defendant's infringement thereof for the use made of the invention by defendant, together with interest thereon, and the costs of this suit.

21. Defendant's amended counterclaim should be dismissed with costs assessed against defendant and recoverable by plaintiff.