# GRANT BROTHERS CONSTRUCTION CO. *v.* UNITED STATES.

## ERROR TO THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 182. Argued January 21, 22, 1914.—Decided March 16, 1914.

Errors alleged to have been committed by the trial court which do not involve anything fundamental or jurisdictional must be regarded as waived if they were not presented to the Supreme Court of the Territory.

An action by the United States to recover penalties under the Alien Contract Labor Law is civil and attended with the usual incidents of a civil action. *United States* v. *Regan, ante,* p. 37.

Where an action for penalties was tried on the theory that the defend-

ant was not liable unless the violations were knowingly committed and the jury returns a verdict against the defendant after being charged that knowledge is an essential element of the cause of action, the petition, if omitting an allegation of knowledge, can be regarded as amended to conform to the facts, the defendants not being prejudiced thereby.

It is most unreasonable to reverse a judgment for a defect in pleading by which the defendant has been in no way prejudiced.

The trial court was right in refusing to suppress depositions because the notices in regard to taking them were defective in certain respects which could not and did not mislead the parties.

While, as a general rule, a judgment binds only the parties and their privies, a judgment in a prior action may be admissible against a stranger as *prima facie*, although not conclusive, proof of facts which may be shown by evidence of general reputation—such as alienage.

The decision of a board of special inquiry that certain persons were aliens was properly admitted in a suit by the United States to recover penalties for violations of the Alien Contract Labor Act, as *prima facie* evidence of the alienage of the persons before the board.

In this case, it appears from the evidence that there was proof other than of the acts of the professed agent to show his agency, and there was also sufficient testimony to make it a question for the jury to determine whether the instructions given by the defendant to its agent not to violate the Alien Contract Labor Act were given in good faith.

Under the Alien Contract Labor Act a separate penalty shall be assessed in respect of each alien; and this is so notwithstanding all the aliens for whose employment penalties are asked were brought into the United States at one time. *Missouri, Kansas & Texas Ry. Co.* v. *United States,* 231 U. S. 112.

There was no error in this case in rendering judgment against defendants for costs.

13 Arizona, 388, affirmed.

THE facts, which involve the validity of a judgment obtained by the United States for penalties for violation of the Alien Contract Labor Law, are stated in the opinion.

*Mr. Isidore B. Dockweiler,* with whom *Mr. A. C. Baker* and *Mr. Robert B. Murphey* were on the brief, for plaintiffs in error:

The statute is highly penal and must be strictly construed so as to bring within its condemnation only those

who are shown by direct and positive averments in the complaint to be embraced within the terms of the law.

Although this action is civil in form, it is in fact in the nature of a criminal proceeding in that it seeks to recover a penalty for the commission of a crime. *United States* v. *Edgar*, 45 Fed. Rep. 46; *United States* v. *M'Elroy*, 115 U. S. 252; *United States* v. *Gay*, 95 Fed. Rep. 226; *United States* v. *Tsokas*, 163 Fed. Rep. 129; *Regan* v. *United States*, 183 Fed. Rep. 293; *Lees* v. *United States*, 150 U. S. 476; *United States* v. *Hepner*, 213 U. S. 103; *United States* v. *Stevenson*, 215 U. S. 190.

For the distinction between remedial and penal statutes see *Huntington* v. *Attrill*, 146 U. S. 657; *Brady* v. *Daly*, 175 U. S. 153; 2 Bishop's New Crim. Law, par. 504; *Dunbar* v. *United States*, 156 U. S. 185; *United States* v. *Scott*, 74 Fed. Rep. 213; *United States* v. *Mitchell*, 141 Fed. Rep. 666; *State* v. *Williams*, 139 Indiana, 43; *State* v. *Waterbury*, 133 Iowa, 137; *State* v. *Root*, 94 App. Div. 84; *Rex* v. *Lawley*, 2 Stra. 904.

Knowingly, when applied to an act or thing done, imports knowledge of the act or thing so done, as well as an evil intent or bad purpose in doing such thing. *Rosen* v. *United States*, 161 U. S. 29; *Price* v. *United States*, 165 U. S. 311; *Verona Cheese Co.* v. *Murtaugh*, 50 N. Y. 314; *Driskill* v. *Parish*, 7 Fed. Cases, 1100; *Darnborough* v. *Benn*, 187 Fed. Rep. 580; *United States* v. *Craig*, 28 Fed. Rep. 795; *United States* v. *Borneman*, 41 Fed. Rep. 751; *Rex* v. *Hayes*, 23 Can. L. T. 88, 5 Ont. L. Rep. 198; *State* v. *Davis*, 14 R. I. 281; *Pettibone* v. *United States*, 148 U. S. 209; *United States* v. *Terry*, 42 Fed. Rep. 317, 318; *United States* v. *Kirby*, 7 Wall. 482; *United States* v. *Claypool*, 14 Fed. Rep. 127; *Dunbar* v. *United States*, 156 U. S. 185; *United States* v. *Koplik*, 155 Fed. Rep. 919; *United States* v. *Highleyman*, 26 Fed. Cas., No. 15,361; *United States* v. *Janke*, 183 Fed. Rep. 277; *Blakely Bank* v. *Davis*, 135 Georgia, 687; *Robinson* v. *State*, 6 Ga. App. 696;

*State* v. *Bridgewater*, 171 Indiana, 1; *State* v. *Smith*, 18 N. H. 91; *Gregory* v. *United States*, 17 Blatchf. 330; Clark & Marshall, Crimes, par. 55; *McDonald* v. *Williams*, 174 U. S. 397, 406; *Felton* v. *United States*, 96 U. S. 699; *Potter* v. *United States*, 155 U. S. 538; *Yates* v. *Jones' Natl. Bank*, 206 U. S. 158; *St. Louis & S. F. R. Co.* v. *United States*, 169 Fed. Rep. 69; *St. Joseph Stock Yards Co.* v. *United States*, 187 Fed. Rep. 104; *United States* v. *Beatty*, 24 Fed. Cas. 14,555; *State* v. *McBarron*, 66 N. J. L. 680; *Utley* v. *Hill*, 155 Missouri, 232; *State* v. *Smith*, 119 Tennessee, 521.

None of the forty-five counts of the complaint contains any allegation that the .defendant knowingly assisted, encouraged or solicited the migration or importation to the United States of the person named in each count, or that the defendant knew at the time that such person was an "alien contract laborer" as defined by the statute. Cases *supra; Ledbetter* v. *United States*, 170 U. S. 606; *United States* v. *Cook*, 17 Wall. 168, 174; *United States* v. *Cruikshank*, 92 U. S. 542, 558; *United States* v. *Carll*, 105 U. S. 611; *United States* v. *Simmons*, 96 U. S. 360; *United States* v. *Hess*, 124 U. S. 483; *Evans* v. *United States*, 153 U. S. 584.

Failure to allege an essential element of a statutory offense is fatal, can be taken advantage of at any time, and is not cured by verdict. *Supreme Lodge* v. *McLennan*, 171 Illinois, 417.

This ground is not one which is waived even by failure to demur, so it is obvious that it was not waived by consent that it be overruled. *Evans* v. *Gerken*, 105 California, 311; *Morris* v. *Courtney*, 120 California, 63; *United States* v. *Carll*, 105 U. S. 611; 1 Bishop's New Crim. Pro., par. 123, sub. 3; *Teal* v. *Walker*, 111 U. S. 242; *Kentucky Ins. Co.* v. *Hamilton*, 63 Fed. Rep. 93.

It was error to admit the minutes of the Board of Special Inquiry showing that at a meeting of that board the la-

borers were excluded from admission to the United States as alien contract laborers.

Defendant was not a party to, or present, or represented at, and had no notice of, the *ex parte* hearing of the board whose summary order the Government seeks, in this case, to introduce against it. *United States* v. *Sing Tuck,* 194 U. S. 161. *United States* v. *Hills,* 124 Fed. Rep. 831, is not a valid authority in this case. See *Pearson* v. *Williams,* 202 U. S. 281; *Lee Sing* v. *United States,* 180 U. S. 488; *Leggate* v. *Clark,* 112 Massachusetts, 308.

The order of the special board of inquiry is not competent as a public record. *Naanes* v. *State,* 143 Indiana, 299; *Dewey* v. *Algire,* 37 Nebraska, 6.

For cases in which coroners' verdicts have been held to be incompetent, see *State* v. *Turner,* Wright, 20; *Wheeler* v. *State,* 34 Oh. St. 394, 398; *Colquit* v. *State,* 107 Tennessee, 381; *Memphis & C. R. Co.* v. *Wombach,* 84 Alabama, 149; *Hollister* v. *Cordero,* 76 California, 649; *Rowe* v. *Such,* 134 California, 573; *Germania Ins. Co.* v. *Ross-Lewin,* 24 Colorado, 43; *Central Railroad* v. *Moore,* 61 Georgia, 151, 152; *State* v. *Commissioners,* 54 Maryland, 426; *Supreme Council* v. *Brashears,* 89 Maryland, 624; *Wasey* v. *Insurance Co.,* 126 Michigan, 188; *Cox* v. *Royal Tribe,* 42 Oregon, 365.

The courts below erred in permitting evidence as to the making of offers and promises of employment to Mexicans in Mexico, and in permitting witnesses to testify to acts of assistance and encouragement rendered by them to the Mexicans in their migration from Mexico into the United States, and also in admitting the passes.

An agency, or the extent of an agency, or the authority of an agent, cannot be proven by the acts and declarations of the person professing authority to act as such agent. *United States* v. *Boyd,* 5 How. 29; *Regan* v. *United States,* 183 Fed. Rep. 293.

The *ex parte* depositions taken by the Government

should have been suppressed. A commission issued without notice having been served is void. *Harris* v. *Wall*, 7 How. 695; *Kline. Bros.* v. *Insurance Co.*, 184 Fed. Rep. 969; *Knode* v. *Williamson*, 17 Wall. 587; *Buddicum* v. *Kirk*, 3 Cr. 293; *W. U. Tel. Co.* v. *Collins*, 45 Kansas, 94; *Garner* v. *Cutler*, 28 Texas, 183; *Indiana Pub. Co.* v. *Ayer*, 34 Ind. App. 284.

The use of depositions in an action to recover a penalty as a punishment for a criminal act was improper and infringed on defendant's constitutional right to be confronted by the witnesses, and the defendant was prejudiced thereby. *Rulofson* v. *Billings*, 140 California, 252.

Verdict for defendant should have been directed.

A trial court may direct a verdict for one party to an action whenever, upon all the evidence, a contrary verdict, if rendered by the jury, would have to be set aside as unjustified and unsupported by the evidence. *Ryder* v. *Wombwell*, L. R. 4 Exch. 39; *Giblin* v. *McMullen*, L. R. 2 P. C. Apps. 335; *Improvement Co.* v. *Munson*, 14 Wall. 448; *Parks* v. *Ross*, 11 How. 373; *Merch. Bk.* v. *State Bk.*, 10 Wall. 637; *Hickman* v. *Jones*, 9 Wall. 201; *Estate of Morey*, 147 California, 495.

The governing officers of the defendant, and they only, should be regarded as the corporation in determining whether the defendant corporation knowingly assisted, encouraged or solicited the migration or importation of any alien contract laborers. *Lake Shore R. Co.* v. *Prentice*, 147 U. S. 101; *Hollard* v. *Vinton*, 105 U. S. 7; *Hindman* v. *First National Bank*, 98 Fed. Rep. 562; *Denver & Rio Grande Ry. Co.* v. *Harris*, 122 U. S. 597; *Salt Lake City* v. *Hollister*, 118 U. S. 256; *Philadelphia, W. & B. R. R. Co.* v. *Quigley*, 21 How. 202; *United States* v. *Kelso*, 86 Fed. Rep. 304, 306; *State* v. *Morris E. R. Co.*, 23 N. J. L. 360; *Regina* v. *Gt. N. of Eng. Ry.*, 58 E. C. L. 315; *Commonwealth* v. *Proprs. of New Bedford Bridge*, 2 Gray, 339.

The distinction between the civil liability of a corpora-

tion for the acts of its servants and agents, and the criminal liability of a corporation for the criminal acts of its servants or agents is important in this case.

A master or principal is not liable criminally for the criminal acts of his servant or agent unless he directed, assented to or acquiesced in such illegal acts.

If the master does not aid or abet, countenance or approve, or have knowledge, of the act of his servants, it is the general rule that he cannot be punished criminally therefor. *Taylor v. Nixon* (1910), 2 I. R. 94; *Rex v. Huggins*, 2 Ld. Raym. 1574; 2 New Am. & Eng. Enc. Law & Pr. 834; 20 Am. & Eng. Ency. Law, 176 (2d ed.); 26 Cyc. 1545; 1 Clark & Marshall, Agency, 1140; Mechem, Agency, par. 746; 88 Am. St. Rep. 797; *Hoover v. Wise*, 91 U. S. 311; *Whitton v. State*, 37 Mississippi, 379; *Anderson v. State*, 22 Oh. St. 305; *Commonwealth v. Nichols*, 10 Met. 259; *Commonwealth v. Junkin*, 170 Pa. St. 194; *Cushing v. Dill*, 2 Scammon (Ill.), 460; *Cushman v. Oliver*, 81 Illinois, 444; *Satterfield v. West. Un. Tel. Co.*, 23 Ill. App. 446; *State v. Balti. & Ohio R. R. Co.*, 15 W. Va. 362; *Hall v. Nor. & West. R. Co.*, 44 W. Va. 36; *Williams v. Hendricks*, 115 Alabama, 277; *State v. Bacon*, 40 Vermont, 456; *Parks v. People*, 49 Michigan, 333; *Whitecraft v. Vanderver*, 12 Illinois, 235; *Nall v. State*, 40 Alabama, 262; *Seibert v. State*, 40 Alabama, 60; *Spokane v. Patterson*, 46 Washington, 93; *Hipp v. State*, 5 Blakf. (Ind.) 149.

In this case the guilty knowledge of the defendant company is an essential ingredient of the offense. The general rule applies that the master is not criminally responsible unless he participates in, authorizes or consents to the unlawful act. The exception to the rule in cases where knowledge is not an essential element of the offense has no application to the present case. *St. Louis & S. F. R. Co. v. United States*, 169 Fed. Rep. 69; *Felton v. United States*, 96 U. S. 699; *United States v. Beatty*, 24 Fed. Cas. 14,555; *Chisholm v. Doulton*, 22 Q. B. D. 736;

*Verona Cheese Co.* v. *Murtaugh,* 50 N. Y. 314; *Coubon* v. *Muldowney* (1904), 2 Irish Law Reports, 498; *State* v. *Smith,* 10 R. I. 258; *State* v. *Hayes,* 67 Iowa, 27; *Taylor* v. *Nixon* (1910), 2 I. R. 94; *Williams* v. *Hendricks,* 115 Alabama, 277; *Patterson* v. *State,* 21 Alabama, 571.

There is no evidence in the case at bar which can justify or support a verdict for the Government involving a finding that the defendant construction company knowingly induced, assisted, encouraged or solicited, or caused to be induced, assisted, encouraged or solicited, the migration or importation of any of the forty-five laborers named in the complaint.

The majority of laborers engaged in railroad construction work in Arizona are of Mexican descent.

It was proper and lawful for anyone to employ, in the United States, Mexican citizens who had migrated to the United States, whether of their own accord, or whether they had been unlawfully induced to come by the acts of others, not known to the employer.

There is no evidence that defendant's contract with Carney authorized or contemplated any violation whatever of the immigration act; the undisputed evidence shows that it gave strict orders not to assist, encourage or solicit the importation or migration of any laborers from Mexico, and not to even talk to laborers in Mexico.

The positive and specific instructions given to Carney were given in absolute good faith. There is no evidence to the contrary. This is the only conclusion which can be drawn from the evidence as a matter of law.

The knowledge contemplated by the statute, essential to be proven in the case at bar, is actual knowledge, and not constructive knowledge or notice of facts which, upon inquiry, would lead to actual knowledge.

There is no evidence that any of defendant's officers had any actual knowledge of the illegal acts of Carney and others acting under him.

There is no evidence that the defendant itself furnished conveyance or transportation, or paid any of the expenses of said laborers from Mexico to the United States.

Proof of the alienage of each and every of the forty-five laborers named in each of the forty-five counts respectively of the complaint was essential under the statute. There was no proof as to thirty-five. The mere fact that the laborers were of Mexican descent is no proof that they were born in Mexico.

As the act makes the offense a misdemeanor, the Government, even when proceeding for the penalty only, must furnish the degree of proof required in a criminal case. *United States* v. *Regan*, 203 Fed. Rep. 433; *Boyd* v. *United States*, 116 U. S. 616; *Lees* v. *United States*, 150 U. S. 476; *Huntington* v. *Attrill*, 146 U. S. 657; *Equitable Life Assur. Soc.* v. *Commonwealth*, 113 Kentucky, 126; *Coffey* v. *United States*, 116 U. S. 436; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265; *United States* v. *The Burdett*, 9 Pet. 682; *Gilbert* v. *Bone*, 79 Illinois, 341; *Atchison, T. & S. F. R. Co.* v. *People*, 227 Illinois, 270; *Riker* v. *Hooper*, 35 Vermont, 457; *White* v. *Comstock*, 6 Vermont, 405; *W. H. Small & Co.* v. *Commonwealth*, 134 Kentucky, 272.

The court erred in refusing to charge the jury that their verdict if for the Government could not exceed one thousand dollars. There was but one act done, one offense committed, and but one penalty incurred, and not forty-five offenses nor forty-five penalties.

Under the statute one shipment of laborers constitutes but one misdemeanor, and but one penalty is incurred. One act cannot be split or divided into many offenses and the penalties thereby multiplied. *Balt. & Ohio S. W. R. R. Co.* v. *United States*, 220 U. S. 94; *Standard Oil Co.* v. *United States*, 164 Fed. Rep. 376.

The mere inducing and soliciting of an alien laborer fixes the status of the person as an alien contract laborer, but does not authorize a verdict for the penalty.

The instruction authorized a verdict for the Government without any finding of knowledge by the defendant of the status of the person as an alien contract laborer.

The instruction is an attempt to extend the issues raised in the pleadings, and is therefore erroneous. 11 Ency. Pl. & Pr., p. 159.

One cannot be said to consent to an act of the commission of which he had no knowledge. *McDonald* v. *Williams*, 174 U. S. 397, 406.

It was error to award judgment for costs against the defendant. *Phillips* v. *Gaines*, 131 U. S. CLXIX, appx.

At common law costs are not recoverable against the opposite party. *United States* v. *Ringgold*, 8 Pet. 150; *Antoni* v. *Greenhow*, 107 U. S. 769; *United States* v. *Verdier*, 164 U. S. 213; *Pine River Co.* v. *United States*, 186 U. S. 279.

*Mr. Assistant Attorney General Wallace* for the United States.

Mr. JUSTICE VAN DEVANTER delivered the opinion of the court.

In an action of debt, tried to the court and a jury, in one of the district courts of the Territory of Arizona, the United States recovered a judgment against the Grant Brothers Construction Company, a California corporation, for the prescribed penalty of $1,000 for each of forty-five alleged violations of § 4 of the Alien Immigration Act of February 20, 1907, c. 1134, 34 Stat. 898; and upon an appeal to the Supreme Court of the Territory, the judgment was affirmed. 13 Arizona, 388. The construction company and the surety upon its supersedeas bond then sued out this writ of error, claiming that divers errors had been committed by the trial court which should have been, but were not, corrected by the appellate court.

The portions of the statute upon which the action was founded are as follows:

"SEC. 2. That the following classes of aliens shall be excluded from admission into the United States: . . . persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled; . . . *And provided further*, That skilled labor may be imported if labor of like kind unemployed cannot be found in this country: *And provided further*, That the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants.

*     *     *     *     *     *     *     *

"SEC. 4. That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section two of this Act.

"SEC. 5. That for every violation of any of the provisions of section four of this Act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his

own benefit, including any such alien thus promised labor
or service of any kind as aforesaid, as debts of like amount
are now recovered in the courts of the United States; and
separate suits may be brought for each alien thus promised
labor or service of any kind as aforesaid. And it shall be
the duty of the district attorney of the proper district to
prosecute every such suit when brought by the United
States."

The petition contained forty-five counts, each charging,
with considerable detail, that the defendant, by offers and
promises of employment and by providing transportation
and paying expenses, assisted, encouraged and solicited
the migration and importation into the United States from
Mexico of a designated alien laborer who was not within
the terms of either of the last two provisos in § 2 of the
statute. A different alien laborer was named in each
count, and the date of the offending act was given in all as
October 29, 1909.

In a preliminary way, the evidence tended to show these
facts: The construction company was building a line of
railroad in southern Arizona, near Naco, a town on the
international boundary. Laborers in large numbers were
required for the work, and in August, 1909, the company
employed one Carney to procure laborers for it and to
take them to the vicinity of the work. For this he was to
be paid one dollar in gold for each laborer secured and
twenty cents for each meal provided while they were en
route. It was contemplated that he would arrange with
others to aid him, and he secured the assistance of Holler,
Rupelius and Randall, who, like himself, were located at
Nogales, another boundary town. Under this employment
Carney procured, and the company accepted, prior to the
transaction in question, about 450 laborers, 95 per cent.
of whom were Mexicans. Many of these came across the
line on their own initiative and were then engaged by
Holler, but a substantial number were engaged in Mexico

by Rupelius and then brought into the United States at Nogales. Only a few days before the transaction in question, Rupelius gathered together 80 or 90 in Mexico and induced them to enter the United States at Nogales by promising that the construction company would employ them, which it did.

As respects the 45 laborers named in the petition there was evidence tending to show the following: These men were citizens of Mexico and were unskilled laborers who were not within the exemptions specified in the last two provisos in § 2 of the statute. They were secured at Hermosillo, Mexico, by Rupelius, October 28, 1909, were brought into the United States, at Naco, by Randall the next day, were there taken into custody by an immigration inspector, and were examined before a board of special inquiry. The board found that they were alien contract laborers, ordered that they be excluded, and notified them of the order and of their right to an appeal. After consulting with the Mexican Consul at Naco they waived that right, and most of them were returned to Mexico, a few being detained as witnesses. Rupelius had induced them to leave Hermosillo and come into the United States by offers and promises of employment by the construction company. They were brought to Naco upon a railroad pass procured by Carney and purporting to have been issued on account of the construction company, and their only meal en route was provided by Holler at Carney's suggestion. During the latter part of their journey they were in charge of Randall, who had been directed by Carney to deliver them to McDonald, an agent of the construction company, who was expected to be at Naco to receive them. McDonald was there, having come in from one of the company's camps that day. He endeavored to hasten the proceedings before the board of inquiry in order that he might get the men out to the camp that afternoon, and also provided a meal for them while the proceedings

were in progress. This was the first party of Mexicans
that Carney had attempted to bring into the country at
Naco. Others had been brought in at Nogales. Accord-
ing to his statement, the inspection officers at the latter
place had been particularly liberal in admitting Mexican
laborers procured for the construction company; and he
suggested to the inspectors at Naco that like action on
their part would be appreciated, but the suggestion did not
find favor with them.

There were some direct contradictions in the evidence,
different portions gave rise to opposing inferences, and
parts of it were more or less improbable; but as it was the
province of the jury to pass on such matters, which it did
by the verdict, they require no other notice than they will
receive presently.

As several of the alleged errors, not involving anything
fundamental or jurisdictional, were not presented to the
appellate court for consideration, they must be regarded
as waived and will be passed without further notice.
*Montana Railway Co.* v. *Warren,* 137 U. S. 348, 351; *Gila
Valley Railway Co.* v. *Hall, ante,* pp. 94, 98.

It is complained that the trial court permitted the Gov-
ernment to read in evidence the depositions of absent wit-
nesses, instructed the jury to return a verdict for the Gov-
ernment if the evidence reasonably preponderated in its
favor, and in other ways treated the case as civil in sub-
stance as well as in form. But the trial court was right.
An action such as this is civil and is attended with the
usual incidents of a civil action. *United States* v. *Regan,
ante,* p. 37.

The petition did not allege that the acts charged against
the construction company were knowingly done, and it is
said that this operated to render the recovery erroneous.
No doubt the petition was defective. A right to the pen-
alty arises only where § 4 is violated "by knowingly as-
sisting, encouraging or soliciting the migration or impor-

tation" of an alien contract laborer into the United States. Knowledge being an element of what is penalized, it must be included in the statement of a cause of action for the penalty. But there are reasons why the defect did not render the recovery erroneous. The defect was not pointed out in the trial court. On the contrary, the case was tried as if the omitted allegation were in the petition. Both parties introduced evidence bearing upon the company's knowledge, both presented requests for instructions treating it as an essential factor in the case, and the jury was instructed upon that theory. In its charge the court said that before any verdict could be returned for the Government it must appear from the evidence that some representative of the defendant company, for whose act it would be responsible, "knowingly assisted or knowingly encouraged or knowingly solicited or knowingly caused others to assist or encourage or solicit the migration or importation of an alien Mexican contract laborer into the United States." And again: "Where knowledge is an essential ingredient of a cause of action, the existence of the knowledge becomes a question to be determined by the jury, upon a consideration of all the facts and circumstances in the case." It is therefore quite plain that the jury found from the evidence that the acts charged against the defendant were knowingly done, and the petition may well be treated as amended to conform to the facts. Ariz. Rev. Stat. 1901, §§ 1288, 1293; *Reynolds* v. *Stockton*, 140 U. S. 254, 266. The defendant was in no wise prejudiced by the defect, and to make it a ground for reversing the judgment, notwithstanding the theory upon which the trial proceeded, would be most unreasonable. *San Juan Light Co.* v. *Requena*, 224 U. S. 89, 96; *Campbell* v. *United States, Id.* 99, 106.

Complaint is made of the denial of a motion to suppress certain depositions, subsequently read in evidence, which the Government had taken under a commission issued by

the clerk. The only ground for the motion to which our attention is invited is that the preliminary notice described the case as pending in the second district when it was pending in the first. The case had been brought in the former, and was transferred to the latter at the defendant's instance. The notice and accompanying interrogatories were prepared before and served after the transfer. The purpose of the notice was to inform defendant's counsel of the intended application for a commission and of the proposed interrogatories and to give opportunity for filing cross-interrogatories. See Ariz. Rev. Stat. 1901, §§ 2507, 2513. No cross-interrogatories were filed in either district, and after the expiration of the time allowed for them the clerk of the district in which the case was pending issued the commission. Counsel for the defendant could not have been misled or confused by the error in the notice, for they were fully informed of the transfer, having perfected it the day before the notice was served. In these circumstances the trial court, as also the Supreme Court of the Territory, held that the error was inconsequential and did not require the suppression of the depositions. We perceive no reason for disturbing that conclusion. On the contrary, we think it was plainly correct.

Over the defendant's objection, the decision of the board of special inquiry was admitted in evidence as tending to prove that the 45 men were aliens, and it is said that this was error because the defendant was not a party to the proceeding. One of the questions committed by law to the board for decision, subject to an appeal to the Secretary of Commerce, was whether the men were aliens. The document admitted in evidence disclosed that, after a hearing, the board determined that question in the affirmative, and that the men acquiesced by waiving their right to an appeal. In that way their status as aliens was conclusively established as between themselves and the United States. It is true that the defendant was not a

party to that proceeding, and that as a general rule a judgment binds only the parties and their privies. But it is equally true that a judgment in a prior action is admissible, even against a stranger, as *prima facie,* but not conclusive, proof of a fact which may be shown by evidence of general reputation, such as custom, pedigree, race, death and the like, and this because the judgment is usually more per- suasive than mere evidence of reputation. 1 Starkie Ev. 386; 1 Greenleaf Ev., §§ 139, 526, 555; *Patterson* v. *Gaines,* 6 How. 550, 599; *Pile* v. *McBratney,* 15 Illinois, 314, 319; *McCollum* v. *Fitzsimons,* 1 Rich. (So. Car.) 252. In prin- ciple, alienage is within the latter rule, and so the board's decision was properly admitted in evidence for the pur- pose stated.

Considerable evidence was admitted, over the defend- ant's objection, of the acts and declarations of Carney and his assistants while they were procuring laborers in Mexico and bringing them into the United States, and it is con- tended that this was violative of the rule that the acts and declarations of a professed agent are not admissible to prove the existence or extent of his agency. See *United States* v. *Boyd,* 5 How. 29, 50. But the contention rests upon a misconception of what the record discloses. This evidence was not admitted to establish the agency or its extent, but to show that the laborers came into the United States in circumstances which rendered their migration or importation unlawful. Whether the defendant was re- sponsible for what was done was another question. The trial court recognized this and expressly ruled that the agency must be otherwise shown, and we agree with the territorial courts in thinking there was other evidence tending to prove the agency and that it embraced what was done.

The evidence disclosed that when the arrangement was made with Carney, and on one or two occasions there- after, he was in terms instructed not to engage any laborer

in Mexico and not to induce or assist any laborer to migrate thence into the United States, and because of this it is said that the evidence afforded no basis for holding the defendant responsible for the acts of Carney and his assistants in inducing and aiding the migration or importation of the laborers named in the petition. In dealing with this point the courts below held that under the evidence as a whole it was an admissible conclusion that the instructions to Carney were not given in good faith or were in effect abrogated by acquiescence in their nonobservance. An examination of the evidence as set forth in the record satisfies us that it afforded reasonable support for either of these conclusions and therefore that the question was properly one for the jury. And upon looking at the court's charge as incorporated into the record we find that the matter was fairly and adequately submitted.

Although conceding that there was evidence that ten of the men were citizens of Mexico, the company claims that there was no evidence of the alienage of the other thirty-five. It must be held otherwise. Not only did the decision of the board of inquiry constitute such evidence, but it was distinctly testified by some of the men, who became witnesses at the trial, that "they were all Mexicans," meaning thereby, as the context shows, that they were all citizens of Mexico.

Still another contention is that as all the men named in the petition were brought into the United States at one time there was but a single violation of the statute and only one penalty could be recovered. The statute declares that "separate suits may be brought for each alien thus promised labor or service," and this plainly means that a separate penalty shall be assessed in respect of each alien whose migration or importation is knowingly assisted, encouraged or solicited in contravention of the statute. See *Missouri, Kansas & Texas Ry. Co.* v. *United States*, 231 U. S. 112.

The action of the court in rendering judgment against the defendant for the costs is challenged, but this was so clearly right as to render discussion of it unnecessary. Ariz. Rev. Stat. 1901, §§ 1543, 2639; *Kittredge* v. *Race*, 92 U. S. 116, 121; *United States* v. *Verdier*, 164 U. S. 213, 219. As we find no prejudicial error in the record, the judgment is

*Affirmed.*