### STATE v. COLLINS et al.

No. 10379.

District Court, S. D. Texas, Brownsville Division.

May 22, 1935.

H. L. Yates, Jas. L. Abney, Asst. U. S. Atty., and Carlos G. Watson, Sp. Asst. U. S. Atty., all of Brownsville, Tex., and S. L. Gill, of Raymondville, Tex., for the motions.

R. B. Rentfro, Jr., State Dist. Atty., Jack Wiech, and R. C. Roland, all of Brownsville, Tex., and G. Lorimer Brown, Asst. Dist. Atty., of Harlingen, Tex., opposed.

ATWELL, District Judge.

On February 25, 1935, Roy Collins, Eziquel Cavazos, and Francisco Perez were indicted by the state grand jury of Cameron county, Tex., for having, "on or about the 16th day of December, 1934, * * * voluntarily with malice aforethought killed Domingo Olivares, by striking him with a gun and by striking him and beating him with a blackjack, and by striking and beating him with a slugshot, and by striking and beating him with fists, and by striking and beating him with their feet."

In a second count they were charged with "then and there unlawfully, voluntarily and with malice aforethought killing Domingo Olivares in some way or manner and by some means, the instruments and weapons being to the jurors unknown."

Shortly thereafter the United States removed the prosecution into this court by force of the provisions of section 76, 28 USCA p. 552. Collins was an United States Customs Officer, Cavazos was a deputy sheriff, called to Collins' assistance, and Perez was the chauffeur of the deputy sheriff.

Each of the defendants entered a plea of not guilty. A verdict of guilty without malice was returned as to Collins and Cavazos, and of not guilty as to Perez.

These motions suggest that an alien sat on the state grand jury which returned the indictment; that the state district attorney committed error when he asked a character witness for Collins how many men Collins had killed; that trial juror C. L. Wheelock had formed an opinion as to the guilt of the defendant Collins prior to being sworn in as a juror; that Juror Norvell stated in the presence of a man by the name of Cox and a man by the name of Van Zandt during the first day of the trial that he did not see why the jury was not taken into the jury room then to decide the case; that the court erred in not permitting the jury to pass on the question of giving the defendants suspended sentences; that the court erred in saying to the jury, after the jury had been out for considerable time, that: "I have a note from you saying that you have been unable to agree in this case, and ask to be discharged. I cannot do that. I ask you to think with the Court a minute. I do not want to use any pressure on you, nor anything of that sort. You are important people, presumably part of the flower of thinking citizens. Twelve men of that sort must determine this case, and we do not have hung juries in this court. When a jury does hang, it is—I cannot think of a milder word just at this moment, but it is an attack upon the ability of the people to rule themselves. There is no reason why you cannot get together in this case. It is wholly a jury question. Now go out and solve it gentlemen, and if you want to walk a little while or go to your dinner, and then come back, do that. Don't set yourselves up as unassailable in your particular convictions with reference to any particular matter. Hold open minds for the discussion among yourselves in this highly important case and the issues involved in it. I don't mean by that suggestion that any juror should surrender his firm, decided convictions under oath, but I do solemnly ask you to do the best you can to solve this matter. Work hard. Both sides, the attorneys, have been free and full in questioning on the matters for your consideration. We have worked nights, and you have joined in that labor. Now let's don't throw away our effort and make it futile."

When this case was removed to the national court, it became triable under rules of federal procedure and law, save and except that the state law, in the substantive matter, should govern. Wood v. Matthews, Fed. Cas. No. 17,955; Coggill v. Lawrence, 6 Fed. Cas. page 7, No. 2,-957; Richter v. Magone (C. C.) 47 F. 192; Georgia v. O'Grady, 10 Fed. Cas. page 245, No. 5,352; State of Virginia v. Felts (C. C.) 133 F. 85; State of North Carolina v. Gosnell (C. C.) 74 F. 734; State of Delaware v. Emerson (C. C.) 8 F. 411; State of Texas v. Heaton (D. C.) 58 F.(2d) 656.

The first attack is made upon grand juror Garcia. It is claimed that he was a citizen of the republic of Mexico at the time he served on the grand jury which

voted the bill. His testimony was taken at the hearing on the motion, and he testified that he did not know where he was born, but thought he was born "across the river"; that he did not know where his father was born. That in January, 1934, he had filed his first papers for naturalization with the clerk of the United States court at Brownsville. The defendant Collins testified that he had heard three or four months before the trial that Garcia was an alien. That he knew Garcia very well and had stopped at his home for a number of days. Garcia testified that he was on the grand jury when Collins came before it, and that Collins asked that the grand jury indict him so that the matter would be ended. That he, Garcia, voted against the indictment.

These facts indicate quite clearly that no injury resulted to the defendants. Even if we concede that Garcia was an alien, which the proof does not establish, he voted against the indictment.

■ If it be contended, and the contention is quite wise, that the law which requires a grand jury to be made up of twelve men, means twelve American citizens, the fact remains that a motion attacking an indictment found by a grand jury upon which there is an alien must be made speedily. A delay in presenting such a plea is fatal to its efficacy. One may not gamble with a court result, and then seek to have undone that which has been done, upon a ground which that one knew before the trial. A motion to quash an indictment must specifically set out the causes and show injury. Cases such as govern and support the above observations are: Agnew v. U. S., 165 U. S. 36, 17 S. Ct. 235, 41 L. Ed. 624; Lowdon v. U. S. (C. C. A.) 149 F. 673; Wilder v. U. S. (C. C. A.) 143 F. 433, 439; U. S. v. Nevin (D. C.) 199 F. 831; Hillman v. U. S. (C. C. A.) 192 F. 264; U. S. v. Breese (D. C.) 172 F. 761; Breese v. U. S., 226 U. S. 1, 33 S. Ct. 1, 57 L. Ed. 97; Ard v. U. S. (C. C. A.) 54 F.(2d) 358; Luxemberg v. U. S. (C. C. A.) 45 F.(2d) 497; Grant Bros. Const. Co. v. U. S., 232 U. S. 647, 34 S. Ct. 452, 58 L. Ed. 776; King v. U. S. (C. C. A.) 55 F.(2d) 1058.

The recent act by the Congress, approved April 30, 1934, shows the trend, not only of legislation, but the best thought at the present time with reference to technicalities of the sort under consideration. In that act irregularity in the drawing or impaneling of a grand jury or "upon the ground of disqualification of a grand juror," shall not be sustained unless filed within ten days after arraignment. See, also, Roush v. U. S. (C. C. A.) 47 F.(2d) 444; Strang v. U. S. (C. C. A.) 53 F.(2d) 820.

■ The indictment in the instant case was found in February, 1935. It was removed to the United States court at once. The defendant Collins knew that his friend Garcia was on the jury that billed him. He knew at that time, or had information at that time, and prior to that time, that he was an alien. He had heard that he was an alien. The attempt to discredit the indictment is of no avail.

■ The second ground of the motion is based upon the alleged impropriety of the state district attorney in asking a Collins reputation witness, on cross-examination, "How many men has Roy Collins killed," or, "Do you know how many men Roy Collins has killed?" Immediately upon hearing that question, the court stopped the proceedings and with great care and deliberation cautioned the jury to pay no attention to that question and to put it wholly and entirely out of their minds. Likewise, the court reprimanded the prosecuting officer.

This action was taken out of extreme caution. The witness to whom the question was propounded had testified to the good reputation of the defendant Collins for peaceableness. It is quite possible, not to say probable, that the district attorney was within his rights upon cross-examination in asking the question. Certain it is that no harm or injury is shown. Nor can injury be presumed in the face of the facts surrounding the happening.

■ The charge that trial juror Wheelock had formed and expressed an opinion as to the guilt of Collins prior to being sworn in as a juror was not supported by the testimony which was offered at the hearing upon the motion. Juror Wheelock resented the charge contained in the papers, and testified. The state district attorney offered documents tending to show that the sale of merchandise in a local store, where Wheelock worked, to the witness who claimed that Wheelock had so expressed himself, was not made by Wheelock, but by another salesman. The purchaser of the merchandise was a friend of Collins

and engaged in government service on the border. His statement was, in substance, that Wheelock had said to him, while he was purchasing some merchandise of Wheelock, "since Collins is charged with murder, is he still in the government service?"

This statement Wheelock denies. The court believes Wheelock. Still, had Wheelock made the inquiry, there was nothing in that to indicate that he had formed an opinion as to the guilt or innocence of Collins. It was merely the expression of a citizen raising the propriety of an officer continuing on duty when charged with so serious an offense; a question that might arise in the mind of any one, regardless of opinion as to guilt or innocence of the officer.

The charge that trial juror Norvell, while walking with the other jurors from the jury room to the rest room, made some statement which was overheard by a bystander was so shadowy and frivolous, when the testimony was developed, that the court did not share its probity.

■ The claim that the court did not permit the jury to pass on the question of suspended sentences· was never raised with the court at any time until after the return of the verdict, and is unsupported by the record.

■ The objection with reference to the so-called supplemental charge, which was given in response to a note from the jury that they had been unable to agree, in open court and to which there was no exception (Campbell v. U. S. [C. C. A.] 221 F. 186), finds some support ·in some of the authorities. Each case, however, must stand on its own bottom. Israel v. U. S. (C. C. A.) 3 F.(2d) 743. Judicial coercion must never be permitted. The trial judge is not allowed to inquire as to how a jury stands, nor is it his affair. Berger v. U. S. (C. C. A.) 62 F.(2d) 438. The court knew nothing of the numbers on one side 'nor the other, nor whether the jury favored the defendants or favored the prosecution. The utmost care and secrecy marked the proceedings of the jury. So far as the court is aware, there were no leaks whatever. Atwell Fed. Law, 4th, 156; Suslak v. U. S. (C. C. A.) 213 F. 913; Allis v. U. S., 155 U. S. 117, 15 S. Ct. 36, 39 L. Ed. 91.

The note from the jury came some time during the day and just before the evening meal; it was given attention by the court. The testimony of the juror who was holding out against the other eleven discloses that he had been a friend of Collins for about twenty years; that after the instruction of the court, of which complaint is made, he continued to maintain his position, and it was the next day that he concluded to vote for conviction with the thought that the judge would probably give a light sentence. This attitude he evidenced, so he says, after having inquired of another member of the jury with reference to the suspension of the sentence.

■ While a juror may not impeach his own verdict in the United States court, I think the rule is, that when some charge is made, that the trial judge should go into it carefully for the purpose of preserving the sanctity and righteousness of the proceedings of his court. That was done in this case, and there is nothing to indicate that the carefully chosen words of the judge, with respect to the importance of getting together, if possible, had any untoward or improper effect. The defendants and prosecution were entitled to a finding by the jury in the customary and legal manner, and it was the duty of the trial judge to call the attention of the jury to that right, provided the jury was given to understand, and provided it was made quite clear, that neither of them should surrender any conviction or position.

The testimony in this case discloses a night of astonishing cruelties. The defendant Collins, himself, while denying that he had beaten either of the witnesses, Hernandez or Olivares, the dead man, does detail a night of horror in which he was the principal mover. He conceived it to be his official duty and right to stop citizens, cause them to alight from the car in which they were riding, point his pistol at women and children on the highway, sit for long interviews in the dead of ·night, arouse citizens from slumber in their homes and travel ten to twenty-five miles across the country with them; all for the purpose of discovering something that the citizen did not see fit to voluntarily divulge. The jury did not believe that all of such activity was engaged in without the use of the force and assaults and beatings that the witnesses for the prosecution detailed in unshaken and unshakable testimony.

Every caution was indulged in by the court to see that a fair, square trial was

had. Wholly oblivious and unacquainted with any of the parties, or their attorneys, it is my firm conviction that justice has been attained, and the motions are therefore overruled.