HARVEY v. EARLY, Collector of Internal Revenue, et al.

No. 144.

District Court, W. D. Virginia, at Lynchburg.

July 10, 1946.

W. Kinckle Allen, of Amherst, Va., and L. Grafton Tucker, of Lovingston, Va., for plaintiff.

Howard C. Gilmer, Jr., Acting U. S. Atty., of Pulaski, Va., and Douglas W. McGregor, Asst. Atty. Gen., and Fred J. Neuland, Sp. Asst. to the Atty. Gen., for defendants.

BARKSDALE, District Judge.

When this action was called for trial on June 27, 1946, after both sides had announced themselves ready, plaintiff's counsel stated to the court that they thought the undisputed facts set out in the complaint and answer entitled plaintiff to the relief sought, and that they therefore did not desire to introduce evidence. In response to inquiry by the court, plaintiff's counsel advised that they desired that the action be considered by the court as on a motion for a judgment on the pleadings, and defendants' counsel stated that they would waive notice of such a motion and would agree that the court treat this action as being heard upon plaintiff's motion for judgment upon the pleadings. Thereupon, argument was heard, both upon the main issues, and upon the motion of defendant, Nunan, Commissioner of Internal Revenue, upon his special appearance, that the complaint be dismissed as to him.

Although the court is not required by Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to find the facts and state its conclusions of law where an action is disposed of on a motion for judgment on the pleadings, I will briefly state the facts and my conclusions thereon:

### THE FACTS.

The plaintiff filed income tax returns for the years 1941, 1942 and 1943, and paid the taxes disclosed to be due by these returns. Thereafter, on February 5, 1945, the Commissioner of Internal Revenue, through his duly authorized agent, made jeopardy assessments pursuant to Section 273(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 273(a), against the plaintiff, including penalty assessments in the amount of 50 percentum under Section 293(b), the total deficiencies and penalties aggregating $8,169.22. No previous notice of this assessment was given to the plaintiff, but he was later notified, on the forms customarily used, of these deficiency assessments, and by distraint, the aggregate sum of $6,826.83 of plaintiff's money was collected by the defendant, Early, Col-

lector. The principal balance of $1,342.39 has not at this time been collected by the Collector, nor has it been voluntarily paid by the plaintiff.

## CONCLUSIONS.

Plaintiff, by his counsel, makes the principal contentions that defendants' actions were not in compliance with the statutes, that the Commissioner's action in making the jeopardy assessments was arbitrary and not justified by the facts, that the statutes are unconstitutional insofar as they provide for the taking of his property without due process of law, and that therefore the court, by mandatory injunction, should require the Collector to return his money collected by distraint, and that the Collector should be enjoined from making or attempting to make any further collections, and that the assessments be held null and void.

As to the plaintiff's contention that the defendants did not comply with the statutes, without reciting the facts in detail, I am satisfied that the statutes were sufficiently complied with and that there is no merit in this contention of the plaintiff.

As to plaintiff's contention that the defendants acted arbitrarily in making a jeopardy assessment against him, I do not find this contention to be well founded. The statute, Section 273(a), provides that: "If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess such deficiency (together with all interest, additional amounts, or additions to the tax provided for by law) and notice and demand shall be made by the collector for the payment thereof."

The records of this Court, of which I take judicial notice, disclose that on June 4, 1945, two separate indictments were returned in this court against the plaintiff, one charging that, between May 23, 1943, and March 27, 1945, the plaintiff received a large quantity of molasses, a substance of the character used in the manufacture of distilled spirits, and wilfully failed to render a return showing the names and addresses to whom the disposition of the molasses was made, con-

trary to law, and that in March and April, 1944, the plaintiff transferred counterfeit sugar ration stamps and counterfeit gasoline ration stamps, contrary to law. The records further show that on June 5, 1945, the plaintiff herein pleaded guilty to both indictments and was sentenced to a term of imprisonment. By the recital of these facts, I do not mean to even intimate that the plaintiff's conviction of these offenses in any way deprived him of any of his constitutional rights. However, the fact that the plaintiff was, by his own admission, at and preceding the time the Commissioner made the jeopardy assessments on February 5, 1945, engaged in illegal business enterprises, fully justifies the conclusion of the Commissioner that the "collection of a deficiency will be jeopardized by delay, * * *", and therefore the Commissioner's action was not arbitrary.

In order for the plaintiff to successfully contend that the further collection of the taxes assessed against him should be enjoined, that the money already collected should be returned, and the assessments declared null and void, he must overcome the heavy burden imposed by Section 3653 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 3653, as follows: "* * * no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.", and Section 3772(a) thereof, which provides: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

Plaintiff contends that the statute permitting the deficiency assessments, without prior notice to him, with an opportunity to contest the assessments, is unconstitutional under the "Due Process" clause of the Constitution. It seems to me that this

contention is fully answered by the following quotation from Phillips v. Commissioner, 283 U.S. 589, at page 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289 et seq.:

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. Compare Cheatham v. United States, 92 U.S. 85, 88, 89, 23 L.Ed. 561; Springer v. United States, 102 U.S. 586, 594, 26 L.Ed. 253; Hagar v. Reclamation District No. 108, 111 U.S. 701, 708, 709, 4 S.Ct. 663, 28 L.Ed. 569. Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action alleged to be illegal, may be obtained promptly by the writ of habeas corpus, United States v. Woo Jan, 245 U.S. 552; 38 S.Ct. 207, 62 L.Ed. 466. Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, the statutory prohibition of any 'suit for the purpose of restraining the assessment or collection of any tax' postpones redress for the alleged invasion of property rights if the exaction is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue. Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901; Dodge v. Osborn, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557; Graham v. Du Pont, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965. This prohibition of injunctive relief is applicable in the case of summary proceedings against a transferee. Act of May 29, 1928, c. 852, Sec. 604, 45 Stat. 791, 873 [26 U.S.C.A.Int. Rev. Acts, page 458]. Proceedings more summary in character than that provided in Section 280, and involving less directly the obligation of the taxpayer, were sustained in Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 15 L.Ed. 372. It is urged that the decision in the Murray Case was based upon the peculiar relationship of a collector of internal revenue to his government. The underlying principle in that case was not such relation, but the need of the government promptly to secure its revenues.

"Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Springer v. United States, 102 U.S. 586, 593, 26 L.Ed. 253; Scottish Union & National Ins. Co. v. Bowland, 196 U.S. 611, 631, 25 S.Ct. 345, 49 L.Ed. 619. Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied. For the protection of public health, a state may order the summary destruction of property by administrative authorities without antecedent notice or hearing. Compare North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195, 15 Ann.Cas. 276; Hutchinson v. Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520; Adams v. Milwaukee, 228 U.S. 572, 584, 33 S.Ct. 610, 57 L.Ed. 471. Because of the public necessity, the property of citizens may be summarily seized in war-time. Central Union Trust Co. v. Garvan, 254 U.S. 554, 566, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 245, 41 S.Ct. 293, 65 L.Ed. 604; United States v. Pfitsch, 256 U.S. 547, 553, 41 S.Ct. 69, 65 L.Ed. 1084. Compare Miller v. United States, 11 Wall. 268, 296, 20 L.Ed. 135; International Paper Co. v. United States, 282 U.S. 399, 51 S.Ct. 176, 75 L.Ed. 410; Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473. And at any time, the United States may acquire property by eminent domain, without paying, or determining the amount of the compensation before the taking. Compare Kohl v. United States, 91 U.S. 367, 375, 23 L.Ed. 449; United States v. Jones, 109 U.S. 513, 518, 3 S.Ct. 346, 27 L.Ed. 1015; Crozier v. Fried. Krupp Aktiengesellschaft, 224 U.S. 290, 306, 32 S.Ct. 488, 56 L.Ed. 771."

It is true that there are rare instances in which injunctions against tax assessments have been sanctioned. The plaintiff contends that his case is such an instance. He contends that the deficiency assessments made here against him are punitive in character, and that particularly, the as-

sessment of the fifty percentum penalty is entirely punitive, and is equivalent to the conviction of a crime. Section 293(b), which is the authority for the fifty per-centum penalty, is as follows: "Fraud. If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)."

It is, of course, a crime to evade taxation, with fraudulent intent. There is a line of cases holding that penalties imposed, without prior notice to the taxpayer, as punishment for crime, even if called "taxes", are illegal and should be restrained, notwithstanding the statutory inhibition hereinabove referred to against the restraining of the assessment or collection of taxes by a court. This doctrine is enunciated in the case of Coffey v. Noel, Collector, D.C., 11 F.2d 399, a case arising in this District, and most, if not all, of the leading cases are referred to and considered in the able opinion of my predecessor, Judge McDowell. However, Judge McDowell made it quite clear that his action in restraining the collection of certain penalty assessments made against the taxpayer under the Prohibition Act, 27 U.S.C.A. § 1 et seq., was predicated "on the ground that an assessment of a punishment for crime, a punitive tax, which is grossly excessive, was made without notice to him." (page 401 of 11 F.2d).

Judge McDowell further said (page 403 of 11 F.2d): "* * * It is a further fact that the assessment here was necessarily based solely on the actual or supposed commission of a crime by the person assessed; and while the assessment of the item in question here has a resemblance to a true tax assessment, I am inclined to think that it is a delusive resemblance. Where the sole basis of an assessment is the real or assumed commission of a crime, the assessment may be styled a tax, and the amount assessed may be arrived at by using a rate fixed in a revenue statute; but in its real nature the assessment is, I think, the imposition of a penalty for crime. But, even if this be regarded as inaccurate, it is

at least indisputable that, if the assessment here partakes of the nature of an assessment of an (invalid) tax, it also partakes of the nature of an assessment of a (pecuniary) punishment for crime. And this latter element, I believe, prevents section 3224 [26 U.S.C.A. Int.Rev.Code § 3653] from being here applicable. When Congress inhibited injunctions in tax cases, no such hybrid assessment as the one here was contemplated."

It therefore seems to me that in determining whether or not plaintiff's prayer for injunctive relief should be granted, it must be determined whether or not the deficiency assessments, either as to the assessments proper or the penalties assessed, here in question, constituted punishment for crime. If they did, then due process would require at least prior notice and an opportunity to be heard.

It seems to me that this determination is made for me by the Supreme Court in the case of Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. In that case, the court had for determination the precise question of whether or not penalties assessed under Section 293(b) were criminal in character. I will quote at length from this opinion, because it seems to me to be conclusive of the question here presented. In holding that the penalties assessed under Section 293(b) were civil sanctions rather than criminal, the court said at page 398 of 303 U.S. 391, 58 S.Ct. 633, 82 L.Ed. 917 et seq.:

"Second. Mitchell contends that this proceeding is barred under the doctrine of double jeopardy because the 50 per centum addition of $364,354.92 is not a tax, but a criminal penalty intended as punishment for allegedly fraudulent acts. Unless this sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable.

"1. In assessing income taxes the Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires him to make in his annual return. To ensure full and honest disclosure, to discourage fraudulent at-

tempts to evade the tax, Congress imposes sanctions. Such sanctions may confessedly be either criminal or civil. As stated in Oceanic Steam Navigation Co. v. Stranahan, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013: 'In accord with this settled judicial construction the legislation of Congress from the beginning, not only as to tariff, but as to internal revenue, taxation, and other subjects, has proceeded on the conception that it was within the competency of Congress, when legislating as to matters exclusively within its control, to impose appropriate obligations, and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power.'

"Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. The question for decision is thus whether Section 293(b) imposes a criminal sanction. That question is one of statutory construction. Compare Murphy v. United States, 272 U.S. 630, 632, 47 S.Ct. 218, 71 L.Ed. 446.

"Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted.

"Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings since the original revenue law of 1789. Act of July 31, 1789, c. 5, Sec. 36, 1 Stat. 29, 47. In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions. Passavant v. United States, 148 U.S. 214, 13 S.Ct. 572, 37 L.Ed. 426; United States v. Zucker, 161 U.S. 475, 16 S.Ct. 641, 40 L.Ed. 777; Hepner v. United States, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720, 27 L.R.A.,N.S., 739, 16 Ann.Cas. 960; Oceanic Steam Navigation Co. v. Stranahan, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013; Chicago, B. & Q. Ry. Co. v. United States, 220 U.S. 559, 578, 31 S.Ct. 612, 55 L.Ed. 582; United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494; Grant Bros. Construction Co. v. United States 232 U.S. 647, 660, 34 S.Ct. 452, 58 L.Ed. 776; Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446; Various Items v. United States, 282 U.S. 577, 51 S. Ct. 282, 75 L.Ed. 558; Lloyd Sabaudo Societa v. Elting, 287 U.S. 329, 334, 53 S.Ct. 167, 170, 77 L.Ed. 341.

"2. The remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. In Stockwell v. United States, 13 Wall, 531, 547, 551, 20 L.Ed. 491, the Court said of a provision which added double the value of the goods:

" 'It must therefore be considered as remedial, as providing indemnity for loss. And it is not the less so because the liability of the wrongdoer is measured by double the value of the goods received, concealed, or purchased, instead of their single value. The act of abstracting goods illegally imported, receiving, concealing, or buying them, interposes difficulties in the way of a government seizure, and impairs, therefore, the value of the government right. It is, then, hardly accurate to say that the only loss the government can sustain from concealing the goods liable to seizure is their single value, or to assert that the liability imposed by the statute of double the value is arbitrary and without reference to indemnification. Double the value may not be more than complete indemnity. * * *

" 'The act of 1823 was, as we have seen, remedial in its nature. Its purpose was to secure full compensation for interference with the rights of the United States.'

"3. In sections 276 and 293, 26 U.S.C.A. §§ 276, 293 and notes, it is provided that collection of the 50 per centum addition, like that of the primary tax itself, may be made 'by distraint' as well as 'by a proceeding in court.' If the section provided a

criminal sanction, the provision for collection by distraint would make it unconstitutional. Compare Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Corp. v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318. See also United States v. Chouteau, 102 U.S. 603, 611, 26 L.Ed. 246; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Lees v. United States, 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150; United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551. That Congress provided a distinctly civil procedure for the collection of the additional 50 per centum indicates clearly that it intended a civil, not a criminal, sanction. Civil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply. Thus the determination of the facts upon which liability is based may be by an administrative agency instead of a jury, or if the prescribed proceeding is in the form of a civil suit, a verdict may be directed against the defendant; there is no burden upon the Government to prove its case beyond a reasonable doubt, and it may appeal from an adverse decision; furthermore, the defendant has no constitutional right to be confronted with the witnesses against him, or to refuse to testify; and finally, in the civil enforcement of a remedial sanction there can be no double jeopardy.

"4. The fact that the Revenue Act of 1928 contains two separate and distinct provisions imposing sanctions, and that these appear in different parts of the statute, helps to make clear the character of that here invoked. The sanction of fine and imprisonment prescribed by Section 146(b) for willful attempts 'in any manner to evade or defeat any [income] tax,' introduced into the act under the heading 'Penalties,' is obviously a criminal one. The sanction of 50 per centum addition 'if any part of any deficiency is due to fraud with intent to evade tax,' prescribed by Section 293(b), introduced into the act under the heading 'Additions to the tax,' was clearly intended as a civil one. This sanction, and other additions to the tax are set forth in Supplement M, entitled 'Interest and Additions to the Tax.' The supplement includes, besides Section 293(b), Sections 291, 292, 293(a), and 294, 26 U.S.C.A. §§ 291, 292, 293(a), 294 and notes. Section 291 prescribes a 25 per centum addition for failure to make and file a return; Section 292 prescribes interest at the rate of 6 per cent. per annum upon the deficiency from the date prescribed for payment of the tax; Section 293(a), an addition of 5 per centum if the deficiency 'is due to negligence, or intentional disregard of rules and regulations but without intent to defraud'; and section 294 prescribes an addition to the tax of 1 per centum per month in case of nonpayment. Obviously all of these 'Additions to the Tax' were intended by Congress as civil incidents of the assessment and collection of the income tax."

■ I therefore arrive at the conclusion that the plaintiff is not entitled to any of the relief for which he has prayed. I arrive at this conclusion primarily by reason of the above quoted statutes inhibiting the restraining of the assessment or collection of taxes by a court, and inhibiting suits for the recovery of taxes until claim for refund has been filed (Sections 3653 and 3772 of the Internal Revenue Code). However, in reaching this conclusion, I am also reassured by the fact that the plaintiff taxpayer has a plain, adequate and complete remedy at law. If he believes that the taxes here in question have been erroneously determined and assessed against him by the Commissioner, he may pay the balance of the tax, file his claim for refund under the provisions of Section 322 of the Internal Revenue Code, and if his claim should be disallowed by the Commissioner, he may institute his action for a refund of all or such part of the taxes and penalties as may be erroneous, either in this court or the Court of Claims, under the provisions of Section 3772 of the Internal Revenue Code.

■ It occurred to me that it would expedite the determination of the ultimate question of whether all or any part of the taxes assessed, were assessed improperly, if I should treat this action as an action under the Tucker Act, 28 U.S.C.A. §§ 41(20). However, that cannot be done because the

768

plaintiff has not paid all the taxes assessed, nor has he filed any claim for refund, both of which are conditions precedent to an action under the Tucker Act.

As an order will be entered dismissing the plaintiff's complaint, at his costs, I do not reach the question raised by the motion of the defendant, Nunan, Commissioner, that the complaint be dismissed as to him, although I am inclined to the view that his motion should be granted if a determination of the question raised by his motion were necessary.